AARON D. FORD
  Attorney General
Steve Shevorski (Bar No. 8256)
  Chief Litigation Counsel
Jeffrey M. Conner (Bar No. 11543)
  Deputy Solicitor General
Kiel B. Ireland (Bar No. 15368C)
  Deputy Attorney General
Office of the Attorney General
555 E. Washington Ave, Ste. 3900
Las Vegas, NV 89101
(702) 486-3420 (phone)
(702) 486-3773 (fax)
sshevorski@ag.nv.gov
jconner@ag.nv.gov
kireland@ag.nv.gov

*Attorneys for State Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROGER PALMER; CHAD MOXLEY; and FIREARMS POLICY COALITION,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHEN SISOLAK, Governor of Nevada; AARON FORD, Attorney General of Nevada; GEORGE TOGLIATTI, Director of the Nevada Department of Public Safety; MINDY MCKAY, Administrator of the Records, Communications, and Compliance, Division of the Nevada, Department of Public Safety; JOSEPH LOMBARDO, Sherriff of Clark County, Nevada; STEVEN WOLFSON, District Attorney of Clark County, Nevada; DANIEL COVERLEY, Sherriff of Douglas County, Nevada; and, MARK JACKSON, District Attorney of Douglas County, Nevada,<br><br>Defendants. | Case No. 3:21-cv-00268-MMD-WGC<br><br>**STATE DEFENDANTS' RESPONSE TO MOTION FOR PRELIMINARY INJUNCTION** |

Defendants Stephen Sisolak, Aaron D. Ford, George Togliatti and Mindy McKay (collectively, the "State Defendants"), by and through counsel, oppose Plaintiffs Roger Palmer, Chad Moxley and Firearms Policy Coalition's motion for a preliminary injunction, ECF No. 6.

## I. Introduction

This Court should deny Plaintiffs' motion for a preliminary injunction. Assembly Bill 286 ("AB 286") prohibits the possession of firearms that lack serial numbers – commonly called "ghost guns" – and the kits that are used to assemble these virtually untraceable firearms. No Plaintiff disputes the State or federal government's power to require serial numbers on manufactured firearms. Plaintiffs' contention is that ghost gun kits and the ghost guns that result from self-manufacture occupy a privileged place in federal constitutional law. No precedent supports their view. AB 286 is constitutional.

The Second Amendment does not insulate ghost guns from reasonable public safety legislation such as AB 286. The Second Amendment's core right is the possession of firearms for defense of hearth and home. AB 286 does not violate the Second Amendment because it does not interfere with that core right. Any Nevadan who could legally purchase a firearm for home defense before AB 286 passed can still do so today, provided that the firearm has a serial number. There is no evidence that AB 286 will impede lawful access to firearms or that ghost guns have any advantage for home defense over firearms with serial numbers.

The Fifth Amendment's takings clause does not hamstring state government's traditional power to regulate, and indeed prohibit, dangerous private property. That is why federal courts have consistently found that other bans of firearm components did not implicate the Takings Clause.

Because Plaintiffs cannot mount any serious argument countering the State's valid public interest goal in passing important public safety legislation on ghost guns, Plaintiffs collapse the remaining 3 preliminary injunctive relief elements into one. Plaintiffs' irreparable harm and public interest arguments are based solely on the purported violation of their constitutional rights. However, because there was no constitutional violation, it follows that they have failed to carry their burden as to irreparable harm and the public interest. Injunctive relief is not appropriate here.

. . .

## II. Background

### A. Plaintiffs' claims and their motion for extraordinary relief

#### 1. Plaintiffs' claims

Plaintiffs are Robert Palmer (**Palmer**), Chad Moxley (**Moxley**), and Firearms Policy Coalition (**FPC**). ECF No. 1, ¶¶ 17-19. Defendants are Governor Stephen Sisolak, Attorney General Aaron Ford, Director of Public Safety George Togliatti, and Division Administrator Mindy McKay. *Id.* ¶¶ 20-24.

Plaintiffs allege two federal constitutional theories. They allege Nevada Assembly Bill 286 violates the Second Amendment's Keep and Bear Arms Clause and the Fifth Amendment's Takings Clause. *Id.* ¶¶ 123-160. They only seek extraordinary relief. *Id.* at 36-37 (prayer for relief).

#### 2. Plaintiffs' declarations

FPC is an advocacy organization. ECF No. 6-1. FPC describes what it advocates:

> The purposes of Plaintiff FPC include defending and promoting the People's rights – especially the fundamental, individual Second Amendment right to keep and bear arms – advancing individual liberty, and restoring freedom.

*Id.* ¶ 5. Relevant here, FPC wants its members to have the freedom to have unserialized (i.e. lacking a serial number) firearm components and firearm construction materials. *Id.* ¶ 10. They further desire to use unserialized firearm components to "self-manufacture" unserialized firearms for "self defense and other lawful purposes." *Id.* ¶ 13.

Moxley is a firearms dealer. ECF No. 6-2, ¶¶ 5-6. He attends about two gun shows per month and sells up to 40 "unfinished receiver" kits at each show. *Id.* ¶ 7. Moxley also "self-manufactured" handguns and rifles that are finished without any serial numbers. *Id.* at ¶11.

Palmer is a private investigator. ECF No. 6-3, ¶ 5. He owns unserialized handguns and rifles. *Id.* ¶ 8. They are unserialized because he "self-manufactured" them from unserialized component parts. *Id.*

. . .

### B. At issue – avoidance of background checks

After reviewing Plaintiffs' declarations, it is important to state what is not at issue. First, Plaintiffs have not identified any advantage that ghost guns have for self-defense over firearms with serial numbers. Second, neither of the individual Plaintiffs declared that he will lack firearms for self-defense if he disposes of his ghost guns. Third, neither has declared that he will be unable to obtain serialized firearms if AB 286 is upheld. Fourth, there is no evidence that AB 286 will affect Moxley and Palmer's ability to visit Douglas and Clark County gun stores to purchase serialized firearms. *See* State Federal Firearms Listings, ATF, https://bit.ly/35UfmOZ (last visited June 26, 2021). Fifth, there is no proper evidence supporting Plaintiffs' assertion that ghost guns and unfinished receiver kits are commonly possessed by law-abiding citizens. ECF No. 6-1, ¶ 10; ECF No. 6-2, ¶ 12; ECF No. 6-3, ¶ 10. Sixth, nowhere do Plaintiffs mount any challenge to the right of government to require serial numbers on manufactured firearms.

The issue for this case is therefore narrow. The putative right to own, possess, sell, unfinished receiver kits and the ability to use them to self-manufacture unserialized firearms. What is unmentioned by Plaintiffs, but is not subject to serious dispute, is that those unfinished receiver kits are sold without any background checks. *See* Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27720, 27726 (proposed May 21, 2021) (to be codified at CFR pts. 447, 478-79); *Hearing on AB 286 Before the Senate Judiciary Committee on May 11, 2021*, 81st Sess., at 1:14:06 to 1:14:21 (Nev. 2021) (statement of Assemb. Jauregui), https://bit.ly/2SupquV [hereinafter "*May 11 Senate Hearing*"].[1]

### C. Legal background

#### 1. Serial numbers are the heart of the current regulatory regime

The Gun Control Act of 1968, Pub. L. 90-351, 82 Stat. 197, establishes numerous requirements for the manufacture, transfer and possession of firearms. Its "twin goals" are

---

[1] Because minutes for the 2021 legislative sessions are not yet available, *May 11 Senate Hearing* citations will contain a pincite to the hearing recording's timestamp.

"to keep guns out of the hands of criminals and others who should not have them, and to assist law enforcement authorities in investigating serious crimes." *Abramski v. United States*, 573 U.S. 169, 180 (2014). To keep weapons out of the hands of persons who should not have them, the Gun Control Act criminalizes the possession of firearms by, among others, those who "ha[ve] been adjudicated as a mental defective or who ha[ve] been committed to a mental institution," felons and domestic violence misdemeanants. 18 U.S.C. § 922(g). It also prohibits federal firearm licensees from selling firearms to minors. *Id.* § 922(b)(1).

To assist law enforcement in investigating crimes, the Gun Control Act requires that each firearm built by a licensed manufacturer contain a serial number unique to that firearm. 18 U.S.C. § 923(i); 27 C.F.R. § 478.92(a). It is a crime to possess a firearm that has had its serial number obliterated. *Id.* § 922(k). The statute also imposes recordkeeping requirements on federal firearm licensees so that a gun found on the street can be traced, through its serial number, to its point of sale. *Abramski*, 573 U.S. at 173.

The Gun Control Act's provisions do not apply to every gun component. With some exceptions not relevant here, only a gun's "frame or receiver" is considered a "firearm" subject to the Gun Control Act's prescriptions and proscriptions. 18 U.S.C. § 921(a)(3).

The "[f]rame or receiver" – which the rest of this brief will refer to simply as the "receiver" – is the part of the gun that receives the other essential components of the gun, like the barrel and the firing pin. *See* 27 C.F.R. 478.11, 479.11. That is, other gun components are attached to the receiver to create the complete gun. The graphic below shows receivers in three types of guns:



*Firearms Verification*, ATF, https://bit.ly/2UJeryz (last visited June 26, 2021). Because the receiver is the statutory "firearm," it must contain the serial number. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27721.

### 2. Unfinished receiver kits allow buyers to easily build firearms without serial numbers

Unfinished receiver kits exploit a loophole in that regulatory system. H.R. Rep. No. 116-88, at 2 (2019); *May 11 Senate Hearing*, *supra*, at 1:16:06 to 1:16:15. An unfinished receiver still requires some work before it can be used in a working gun. AB 286, § 6(9); Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726. Under current federal law, an unfinished receiver is not considered a firearm. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726.

Several companies make and sell unfinished receiver kits. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726. These kits contain all the parts the buyer needs to "complete a functional weapon in a short period of time." *Id.* A supporter of AB 286 testified that a ghost gun can be built from an unfinished receiver kit in "20 to 40 minutes." *May 11 Senate Hearing*, *supra*, at 1:25-24 to 1:26:29.

Since they lack anything that qualifies as a firearm, unfinished receiver kits can be sold without a background check. H.R. Rep. No. 116-88, at 2. That means that minors, people who have been convicted of a domestic violence crime and other prohibited persons can easily obtain unfinished receiver kits. *Id.* And unfinished receiver sales are not subject to the Gun Control Act's recordkeeping provisions. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726.

By that same token, unfinished receiver kits do not contain any serialized components. *May 11 Senate Hearing*, *supra*, at 1:17:14 to 1:17:26. And, of course, that means that the gun assembled from the kit does not have a serial number. Guns made that way are virtually untraceable if used in a crime, which is why they're commonly called ghost guns. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722-23.

### 3. Ghost guns are a present and increasing threat to public safety

The U.S. House Committee on Homeland Security has concluded that "[g]host guns" present a "homeland security challenge." H.R. Rep. No. 116-88, at 2. They "enabl[e] prohibited buyers to purchase deadly weapons with just a few clicks online." *Id.* And on the backend, they "hamstring[ ] law enforcement's ability to investigate crimes committed with untraceable weapons." *Id.*

The ATF likewise identified ghost guns as a threat to public safety. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722. Law enforcement agencies recovered nearly 24,000 ghost guns at crime scenes between 2016 and 2020. *Id.* That number has been increasing each year. *Id.* at 27722-23. The ATF also pointed out that the lack of sales controls and serial numbers make it much more difficult to identify and break up firearms trafficking rings involving ghost guns. *Id.* at 27725.

The ATF has issued a notice of proposed rulemaking to address those concerns. If promulgated, the new rule will expand the definition of "firearm" to include unfinished receivers that are "designed to or may readily be converted to" fire projectiles. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726. That means the sale of unfinished receiver kits will be subject to background checks and unfinished receivers will be serialized. *Id.*

### 4. AB 286 responds to the threat posed by unfinished receiver kits and ghost guns

During the Legislature's consideration of AB 286, its sponsor explained that ghost guns are a public safety threat for two reasons: they circumvent background checks and they are virtually impossible to trace if used in a crime. *May 11 Senate Hearing*, *supra*, at 1:14:07 to 1:14:36 (statement of Assemb. Jauregui). She explained that ghost guns are an especially acute threat in Nevada because one of the largest unfinished receiver kit companies in the nation, Polymer80, Inc. is based here. *Id.* at 1:14:37 to 1:14:55.

AB 286 addresses the threat posed by unserialized firearms and firearm components. First, the law bans the possession and sale of unfinished receivers that lack

serial numbers. AB 286, §§ 3, 3.5. Next, it bans the act of assembling an unserialized firearm – that is, the act of using an unfinished receiver kit to create a ghost gun. *Id.* § 4. There are exceptions for building firearms that are inoperable or that are antiques or collector's items, as defined by federal law. *Id.* § 4(1)(a)-(c). Finally, it bans possession of unserialized firearms (i.e. ghost guns). *Id.* § 5. Guns manufactured before serial numbers became required in 1969, as well as inoperable guns, antiques and collector's items, are exempt from the ban on unserialized firearms. *Id.* § 5(1)(b).

The ban on assembling ghost guns is effective immediately. AB 286, § 10(1). But the ban on possessing and selling unserialized unfinished receivers and ghost guns does not take effect until January 1, 2022. *Id.* § 10(2). That way those who legally obtained ghost guns can sell or otherwise dispose of them before they become unlawful. Nev. Legislative Counsel Bureau, *AB 286 Work Session Document* 9 (2021), https://bit.ly/3A3i02O.

**III.   Legal standard**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). The plaintiff must make four separate showings:

(1)   He is likely to succeed on the merits,

(2)   He will suffer irreparable harm without preliminary relief,

(3)   The balance of equities tips in his favor and

(4)   The injunction is in the public interest.

*Id.* at 20. When the party opposing injunctive relief is the government – as is the case here – the third and fourth prerequisites merge. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021).

**IV.   Argument**

Plaintiffs have not met their burden. They are not likely to succeed on the merits – under established Second Amendment and Takings Clause doctrine, AB 286 is . . .

constitutional. Because their irreparable harm and public interest arguments turn solely on their mistaken view of the merits, those arguments fail as well.

### A. Plaintiffs are unlikely to succeed on the merits

Plaintiffs assert a claim based the Second Amendment and a claim based on the federal Takings Clause. ECF No. 1, ¶¶ 142, 152, 159. Plaintiffs are not likely to succeed on either claim.

#### 1. AB 286 does not violate the Second Amendment

##### a. Plaintiffs set out the wrong legal standard by failing to apply the two-step analysis required by the Ninth Circuit

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *Heller v. District of Columbia*, 554 U.S. 570, 635 (2008)).

To succeed on their Second Amendment claim, Plaintiffs must overcome a two-step inquiry. *See United States v. Torres*, 911 F.3d 1253, 1258 (9th Cir. 2019). First, they must show that AB 286 "burdens conduct protected by the Second Amendment." *Id.* If it does not, this Court must affirm it "without further analysis." *Young v. Hawaii*, 992 F.3d 765, 826 (9th Cir. 2021) (en banc), *cert. pet. docketed*, No. 20-1639 (U.S. filed May 11, 2021).

If Plaintiffs can show that AB 286 does burden Second Amendment-protected conduct, then they move onto the second step. *Torres*, 911 F.3d at 1258. They must show that AB 286 fails the applicable level of means-end scrutiny. *Id.*

Plaintiffs do not even attempt to make the showing required by the binding Ninth Circuit caselaw cited above. *See* ECF No. 6, at 12-13. They instead rely on a district court case that is contrary to U.S. court of appeals decisions and has been stayed by the Ninth Circuit. *See* ECF No. 6, at 9-10, 12-14 (citing *Miller v. Bonta*, __ F. Supp. 3d __, No. 19-cv-

. . .

1537, 2021 WL 2284132 (S.D. Cal. June 4, 2021), *stayed pending appeal*, No. 21-55608 (9th Cir. June 21, 2021)).

While Plaintiffs would undoubtedly prefer that that standard apply here, we must apply the Ninth Circuit's precedent, not a stayed district court order. Applying the Second Amendment analysis mandated by the Ninth Circuit shows that AB 286 is constitutional.

> **b. AB 286 does not burden protected conduct because it is a longstanding, presumptively valid regulation and it does not interfere with Nevadans' right to defend "hearth and home"**

AB 286 does not burden Second Amendment-protected conduct, so there is no need to proceed past step one. The Supreme Court's *Heller* decision set out a nonexhaustive list of "longstanding" gun-control measures that are "presumptively lawful." 554 U.S. at 626-27, 627 n.26. Those longstanding, presumptively lawful measures are constitutional because they don't burden Second Amendment-protected conduct. *Torres,* 911 F.3d at 1258. In other words, if the challenged gun control measure is a longstanding, presumptively lawful regulation, the challenge fails at step one.

AB 286's basic requirement is that functioning firearms be serialized. AB 286, §§ 4-5. That requirement is a longstanding, presumptively lawful regulation. Many of the "longstanding" regulations identified in *Heller* were established by the exact same law that established the federal serialization requirement. Gun Control Act of 1968, Pub. L. 90-618, § 102, 82 Stat. 1213, 1220-21, 1223; *see NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196-97 (5th Cir. 2012) (collecting cases). If those other measures are longstanding and presumptively valid, so is a serialization requirement.

AB 286's historical pedigree also shows that it is a longstanding, presumptively valid regulation. The historical record is replete with examples of colonial gun control laws tracking and restricting the possession of firearms. *NRA*, 700 F.3d at 200. Like those laws, AB 286 is intended to ensure that firearm ownership can be traced and to help prevent those who are barred from possessing a firearm from buying one. *May 11 Senate Hearing*, *supra*, at 1:14:07 to 1:14:36 (statement of Assemb. Jauregui).

Putting aside the historical record, as a practical matter AB 286 does not burden Second Amendment-protected conduct. That is because it does not interfere with the right to "defense of hearth and home." *Chovan*, 735 F.3d at 1138 (quoting *Heller*, 554 U.S. at 635). Neither of the individual declarants has testified that if he disposes of his ghost guns, he will lack any firearms to defend his home. See ECF No. 6-2, ¶¶ 11-16; ECF No. 6-3, ¶¶ 8-14. And neither individual Plaintiff points to any advantage ghost guns have over serialized firearms – for example, that they are easier to use or more accurate – in terms of home defense.

Plaintiffs argue that AB 286 burdens their right to "self-manufacture" firearms. ECF No. 6, at 10-11. But they present no evidence that self-assembling unserialized firearms is necessary to home defense. *See id*. And they cite no caselaw finding that the Second Amendment extends to assembling – as opposed to keeping and bearing – firearms. *See id*. Both individual Plaintiffs have access to gun stores that can sell serialized firearms for home defense. In any event, AB 286 does not bar self-assembling firearms. It bars only self-assembling a firearm that does not have a serial number. AB 286, § 4(1).

### c. In the alternative, AB 286 passes heightened scrutiny

Because AB 286 does not burden Second Amendment-protected conduct, this Court need not reach step two. But if it does, it should apply intermediate scrutiny and uphold AB 286.

Intermediate scrutiny is the default level of scrutiny for Second Amendment cases. *See Silvester v. Harris*, 843 F.3d 816, 822-823 (9th Cir. 2016) (collecting cases), *cert. denied sub nom. Silvester v. Becerra*, 138 S. Ct. 945 (2018). Strict scrutiny applies only in the rare case where a measure "implicates the core of the Second Amendment right and severely burdens that right." *Id*. at 821.

As the State Defendants have already explained, AB 286 does not implicate the core Second Amendment right of home defense. *See supra* Part IV.A.1.a. That is why the Third Circuit applied intermediate scrutiny in a challenge to the federal law that criminalized possessing a firearm with an obliterated serial number. *Marzzarella*, 614 F.3d at 97. That

federal law is similar to AB 286 because it is also intended to ensure that guns used in crimes are traceable by way of serial number. *Id.* at 98.

<u>Intermediate scrutiny</u>: A statute is constitutional under intermediate scrutiny as long as (1) the State's stated goal is "significant, substantial, or important" and (2) there is a "reasonable fit" between the statute and the State's goal. *Silvester*, 843 F.3d at 821-22. Intermediate scrutiny is not a strict test, and it does not require that the State choose "the least restrictive means of furthering a given end." *Silvester*, 843 F.3d at 827.

The Ninth Circuit has already held that "preserving the ability of law enforcement to conduct serial number tracing – effectuated by limiting the availability of untraceable firearms – constitutes a substantial or important interest." *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020). Thus, AB 286 satisfies the first requirement of intermediate scrutiny.

AB 286 is a reasonable fit with that important goal. *Marzzarella*, 614 F.3d at 98 (holding that "[r]egulating the possession of un[serialized] firearms" fits "closely with the interest in ensuring the traceability of weapons"). It "reaches only conduct creating a substantial risk of rendering a firearm untraceable." *Id.* It does not prevent any Nevadan who is legally permitted to obtain a firearm to buy a serialized firearm (or assemble one starting with a serialized receiver) for home defense.

<u>Strict scrutiny</u>: Even if this Court applied strict scrutiny to AB 286, it would still pass constitutional muster. A firearms law passes strict scrutiny if it is "narrowly tailored to serve a compelling state interest." *Marzzarella*, 614 F.3d at 99. Crime prevention and investigating gun violence are compelling interests. *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 749 (2010)).

By banning untraceable firearms and their components, AB 286 is narrowly tailored to accomplishing those compelling interests. AB 286 applies at both ends – by making it more difficult for prohibited persons to obtain firearms, and by proscribing possession of a firearm that would be untraceable if used in a crime. And it does so in a strikingly narrow

. . .

way, leaving the gamut of lawful serialized firearms available to Nevadans for home defense. *Marzzarella*, 614 F.3d at 100.

### 2. Plaintiffs' takings claim cannot support injunctive relief and is meritless

#### a. Injunctive relief is not available for takings claims in Nevada because damages are available

As long as damages are available to compensate a taking, the Takings Clause cannot be the basis for injunctive relief. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2176 (2019). Damages are available in Nevada because a plaintiff can bring an inverse condemnation action. *See, e.g.*, *McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110, 1118, 1130 (Nev. 2006). As such, injunctive relief is not available here and Plaintiffs' motion for a preliminary injunction must be denied.

#### b. No compensation is due for restrictions on personal property

Injunctive relief is inappropriate here for the independent reason that Plaintiffs' takings claim fails on the merits. A government does not need to compensate owners when it prohibits a type of personal property through a valid law. *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 366-67 (4th Cir. 2020), *cert. denied*, No. 20-855, 2021 WL 1725174 (U.S. May 3, 2021). For example, in *Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146 (1919), the Supreme Court held that no compensation was due to distillers and jobbers after alcohol was prohibited. *Id.* at 157-58. The plaintiffs there had sufficient time to dispose of their alcohol inventory, so there was no taking. *Id.* A raft of federal courts have likewise concluded that the ATF did not effect a taking when they banned a previously legal firearm component called bump stocks. *Guedes v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, __ F. Supp. 3d __, No. 18-cv-2988, 2021 WL 663183, at *10 (D.D.C. Feb. 19, 2021) (collecting cases), *appeal filed*, No. 21-5045 (D.C. Cir. filed Feb. 23, 2021).

That rule applies here. AB 286 is a valid law prohibiting two types of personal property – ghost guns and unserialized receivers. *See supra* Part IV.A.1. Just as no . . .

compensation was due when alcohol and bump stocks were prohibited, no compensation is due here.

Arguing to the contrary, Plaintiffs liken AB 286 to government actions that "effect[] a physical appropriation, a permanent physical invasion," or a "complete deprivation of all economically beneficial use." ECF No. 6, at 17 (quotation marks omitted). Those comparisons are off-base.

AB 286 is not a "physical appropriation" because Nevada is not taking title to the prohibited items. That is why federal courts have rejected that exact argument in connection with bump-stock bans. *Md. Shall Issue*, 963 F.3d at 366; *McCutchen v. United States*, 145 Fed. Cl. 42, 54 (2019), *appeal filed*, No. 20-1188 (Fed. Cir. filed Nov. 27, 2019).

And while permanent physical invasions and complete deprivations of economically beneficial use can be categorical takings of *real* property, they are not categorical takings of *personal* property. *Md. Shall Issue v. Hogan*, 353 F. Supp. 3d 400, 413 (D. Md. 2018), *aff'd*, 963 F.3d 356; *see Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027-28 (1992). AB 286 affects only personal property, so those principles are irrelevant here.

### B. Plaintiffs' constitutional claims fail, so they have made no showing of irreparable harm

Plaintiffs don't point to any form of irreparable harm besides the purported violation of their constitutional rights. *See* ECF No. 6, at 17-18. As explained above, AB 286 does not violate the Constitution. This Court should therefore find that Plaintiffs have not shown that they are likely to suffer irreparable harm.

### C. The public's interest in preventing and prosecuting gun crime outweighs Plaintiffs' asserted hardship

Just like their irreparable harm argument, Plaintiffs' public interest argument relies solely on their erroneous claim that AB 286 is unconstitutional. ECF No. 6, at 18-19. And just like their irreparable harm argument, their public interest argument fails.

Notably, Plaintiffs do not even attempt to balance their purported interest in this litigation with the public's interest in preventing and prosecuting gun crime. They ignore

that Nevada enacted AB 286 in response to what one witness called "the fastest rising threat to gun safety in the country, and in Nevada particularly." *May 11 Senate Hearing*, *supra*, at 1:15:42 to 1:16:05. A threat that Congress and the ATF have also recognized. H.R. Rep. No. 116-88, at 2 (2019); Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27720, 27726 (proposed May 21, 2021) (to be codified at CFR pts. 447, 478-79). Nevada was reacting to specific crimes committed by ghost guns, including recent attacks on law enforcement. *May 11 Senate Hearing*, *supra*, at 1:14:55 to 1:15:05.

## V.  Conclusion

The Second Amendment does not protect the right to possess an untraceable firearm. AB 286 will not interfere with Nevadans' right to defend their homes. This Court should deny the motion for a preliminary injunction.

DATED this 2nd day of July, 2021.

AARON D. FORD
Attorney General

By: /s/ *Steve Shevorski*
Steve Shevorski (Bar No. 8256)
Chief Litigation Counsel
Jeffrey M. Conner (Bar No. 11543)
Deputy Solicitor General
Kiel B. Ireland (Bar No. 15368C)
Deputy Attorney General
*Attorneys for State Defendants*