AARON D. FORD
  Attorney General
Steve Shevorski (Bar No. 8256)
  Chief Litigation Counsel
Jeffrey M. Conner (Bar No. 11543)
  Deputy Solicitor General
Kiel B. Ireland (Bar No. 15368C)
  Deputy Attorney General
Office of the Attorney General
555 E. Washington Ave, Ste. 3900
Las Vegas, NV 89101
(702) 486-3420 (phone)
(702) 486-3773 (fax)
sshevorski@ag.nv.gov
jconner@ag.nv.gov
kireland@ag.nv.gov

*Attorneys for State Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ROGER PALMER; CHAD MOXLEY; and FIREARMS POLICY COALITION,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHEN SISOLAK, Governor of Nevada; AARON FORD, Attorney General of Nevada; GEORGE TOGLIATTI, Director of the Nevada Department of Public Safety; MINDY MCKAY, Administrator of the Records, Communications, and Compliance, Division of the Nevada, Department of Public Safety; JOSEPH LOMBARDO, Sheriff of Clark County, Nevada; STEVEN WOLFSON, District Attorney of Clark County, Nevada; DANIEL COVERLEY, Sheriff of Douglas County, Nevada; and, MARK JACKSON, District Attorney of Douglas County, Nevada,<br><br>Defendants. | Case No. 3:21-cv-00268-MMD-WGC<br><br>**STATE DEFENDANTS' MOTION TO DISMISS UNDER FRCP 12(B)(6)** |

Defendants Stephen Sisolak, Aaron D. Ford, George Togliatti and Mindy McKay (collectively, the "State Defendants"), by and through counsel, move to dismiss Plaintiffs' complaint under FRCP 12(b)(6).

. . .

## I. Introduction

This Court should dismiss Plaintiffs' complaint. Assembly Bill 286 ("AB 286") prohibits the possession of firearms that lack serial numbers – commonly called "ghost guns" – and the kits that are used to assemble these virtually untraceable firearms. Plaintiffs contend that AB 286 violates the Second Amendment's right "to keep and bear Arms" and Fifth Amendment's takings clause. No authority supports their view.

AB 286 is constitutional. The Second Amendment does not insulate ghost guns from reasonable public safety legislation such as AB 286. The Fifth Amendment's takings clause also does not hamstring state government's traditional power to regulate, and indeed prohibit, dangerous private property. Dismissal is warranted.

## II. Background

### A. Plaintiffs and their claims

Plaintiffs are Robert Palmer ("Palmer"), Chad Moxley ("Moxley"), and Firearms Policy Coalition ("FPC"). ECF No. 1, ¶¶ 17-19. Defendants are Governor Stephen Sisolak, Attorney General Aaron Ford, Director of Public Safety George Togliatti, and Division Administrator of Public Safety Mindy McKay. *Id*. ¶¶ 20-24.

Plaintiffs allege two federal constitutional theories. They allege Nevada Assembly Bill 286 violates the Second Amendment's right to keep and bear arms clause and the Fifth Amendment's takings clause. *Id*. ¶¶ 123-160. They only seek extraordinary relief. *Id*. at 36-37 (prayer for relief).

### B. Legal background

#### 1. Serial numbers are the heart of the current regulatory regime

The Gun Control Act of 1968, Pub. L. 90-351, 82 Stat. 197, establishes numerous requirements for the manufacture, transfer and possession of firearms. Its "twin goals" are "to keep guns out of the hands of criminals and others who should not have them, and to assist law enforcement authorities in investigating serious crimes." *Abramski v. United States*, 573 U.S. 169, 180 (2014). To keep weapons out of the hands of persons who should not have them, the Gun Control Act criminalizes the possession of firearms by, among

others, those who "ha[ve] been adjudicated as a mental defective or who ha[ve] been committed to a mental institution," felons and domestic violence misdemeanants. 18 U.S.C. § 922(g). It also prohibits federal firearm licensees from selling firearms to minors. *Id.* § 922(b)(1).

To assist law enforcement in investigating crimes, the Gun Control Act requires that each firearm built by a licensed manufacturer contain a serial number unique to that firearm. 18 U.S.C. § 923(i). It is a crime to possess a firearm that has had its serial number obliterated. *Id.* § 922(k). The statute also imposes recordkeeping requirements on federal firearm licensees so that a gun found on the street can be traced, through its serial number, to its point of sale. *Abramski*, 573 U.S. at 173.

The Gun Control Act's provisions do not apply to every gun component. With some exceptions not relevant here, only a gun's "frame or receiver" is considered a "firearm" subject to the Gun Control Act's prescriptions and proscriptions. 18 U.S.C. § 921(a)(3).

The "[f]rame or receiver" – which the rest of this brief will refer to simply as the "receiver" – is the part of the gun that receives the other essential components of the gun, like the barrel and the firing pin. *See* 27 C.F.R. 478.11, 479.11. That is, other gun components are attached to the receiver to create the complete gun. The graphic below shows receivers in three types of guns:



. . .

. . .

. . .

*Firearms Verification*, ATF, https://bit.ly/2UJeryz (last visited June 26, 2021).[1] Because the receiver is the statutory "firearm," it must contain the serial number. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27721.

### 2. Unfinished receiver kits allow buyers to easily build firearms without serial numbers

Unfinished receiver kits exploit a loophole in that regulatory system. H.R. Rep. No. 116-88, at 2 (2019); *Hearing on AB 286 Before the Senate Judiciary Committee on May 11, 2021*, 81st Sess., at 1 at 1:16:06 to 1:16:15 (Nev. 2021), https://bit.ly/2SupquV [hereinafter "*May 11 Senate Hearing*"].[2] An unfinished receiver still requires some work before it can be used in a working gun. AB 286, § 6(9); Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726. Under current federal law, an unfinished receiver is not considered a firearm. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726.

Several companies make and sell unfinished receiver kits. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726. These kits contain all the parts the buyer needs to "complete a functional weapon in a short period of time." *Id.* A supporter of AB 286 testified that a ghost gun can be built from an unfinished receiver kit in "20 to 40 minutes." *May 11 Senate Hearing, supra*, at 1:25-24 to 1:26:29.

Since they lack anything that qualifies as a firearm, unfinished receiver kits can be sold without a background check. H.R. Rep. No. 116-88, at 2. That means that minors, people who have been convicted of a domestic violence crime and other prohibited persons can easily obtain unfinished receiver kits. *Id.* And unfinished receiver sales are not subject . . .

---

[1] This Court can take judicial notice of the depiction of a "framer or receiver" as described on the government website of the Bureau of Alcohol, Tobacco, Firearms and Explosives. *See* FED. R. EVID. 201; *see Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (explaining that a court may take judicial notice of a government agency's records and other undisputed matters of public record under FED. R. EVID. 201).

[2] Because minutes for the 2021 legislative sessions are not yet available, *May 11 Senate Hearing* citations will contain a pincite to the hearing recording's timestamp.

to the Gun Control Act's recordkeeping provisions. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726.

By that same token, unfinished receiver kits do not contain any serialized components. *May 11 Senate Hearing*, *supra*, at 1:17:14 to 1:17:26. And, of course, that means that the gun assembled from the kit does not have a serial number. Guns made that way are virtually untraceable if used in a crime, which is why they're commonly called ghost guns. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722-23.

### 3. Ghost guns are a present and increasing threat to public safety

The U.S. House Committee on Homeland Security has concluded that "[g]host guns" present a "homeland security challenge." H.R. Rep. No. 116-88, at 2. They "enabl[e] prohibited buyers to purchase deadly weapons with just a few clicks online." *Id*. And on the backend, they "hamstring[ ] law enforcement's ability to investigate crimes committed with untraceable weapons." *Id*.

The ATF likewise identified ghost guns as a threat to public safety. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722. Law enforcement agencies recovered nearly 24,000 ghost guns at crime scenes between 2016 and 2020. *Id*. That number has been increasing each year. *Id*. at 27722-23. The ATF also pointed out that the lack of sales controls and serial numbers make it much more difficult to identify and break up firearms trafficking rings. *Id*. at 27725.

The ATF has issued a notice of proposed rulemaking to address those concerns. If promulgated, the new rule will expand the definition of "firearm" to include unfinished receivers that are "designed to or may readily be converted to" fire projectiles. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726. That means the sale of unfinished receiver kits will be subject to background checks and unfinished receivers will be serialized. *Id*.

. . .

. . .

### 4. AB 286 responds to the threat posed by unfinished receiver kits and ghost guns

During the Legislature's consideration of AB 286, its sponsor explained that ghost guns are a public safety threat for two reasons: they circumvent background checks, and they are virtually impossible to trace if used in a crime. *May 11 Senate Hearing*, *supra*, at 1:14:07 to 1:14:36 (statement of Assemb. Jauregui). She explained that ghost guns are an especially acute threat in Nevada because one of the largest unfinished receiver kit companies in the nation, Polymer80, Inc. is based here. *Id.* at 1:14:37 to 1:14:55.

AB 286 addresses the threat posed by unserialized firearms and firearm components. First, the law bans the possession and sale of unfinished receivers that lack serial numbers. AB 286, §§ 3, 3.5. Next, it bans the act of assembling an unserialized firearm – that is, the act of using an unfinished receiver kit to create a ghost gun. *Id.* § 4. There are exceptions for building firearms that are inoperable or that are antiques or collector's items, as defined by federal law. *Id.* § 4(1)(a)-(c). Finally, it bans possession of unserialized firearms (i.e. ghost guns). *Id.* § 5. Guns manufactured before serial numbers became required in 1969, as well as inoperable guns, antiques and collector's items, are exempt from the ban on unserialized firearms. *Id.* § 5(1)(b).

The ban on assembling ghost guns is effective immediately. AB 286, § 10(1). But the ban on possessing and selling unserialized unfinished receivers and ghost guns does not take effect until January 1, 2022. *Id.* § 10(2). That way those who legally obtained ghost guns can sell or otherwise dispose of them before they become unlawful. Nev. Legislative Counsel Bureau, *AB 286 Work Session Document* 9 (2021), https://bit.ly/3A3i02O.

### III. Legal standard

This Court should dismiss plaintiff's complaint with prejudice. A court may dismiss a complaint for "failure to state a claim upon which relief may be granted." FRCP 12(b)(6). To survive dismissal under FRCP 12(b)(6), a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP

8(a)(2). Although a complaint need not contain detailed allegations, it must allege sufficient facts to "raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

## IV. Argument

### A. AB 286 does not violate the Second Amendment

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *Heller v. District of Columbia*, 554 U.S. 570, 635 (2008)).

To succeed on their Second Amendment claim, Plaintiffs must meet a two-part test. *See United States v. Torres*, 911 F.3d 1253, 1258 (9th Cir. 2019). First, they must show that AB 286 "burdens conduct protected by the Second Amendment." *Id*. If it does not, this Court must affirm it "without further analysis." *Young v. Hawaii*, 992 F.3d 765, 826 (9th Cir. 2021) (en banc), *cert. pet. docketed*, No. 20-1639 (U.S. filed May 11, 2021). If Plaintiffs can show that AB 286 does burden Second Amendment-protected conduct, then they move onto the second step. *Torres*, 911 F.3d at 1258. They must show that AB 286 fails the applicable level of means-end scrutiny. *Id*.

#### 1. AB 286 does not burden constitutionally protected conduct

AB 286 does not burden Second Amendment-protected conduct, so there is no need to proceed past step one. The Supreme Court's *Heller* decision set out a non-exhaustive list of "longstanding" gun-control measures that are "presumptively lawful." 554 U.S. at 626-27, 627 n.26. Those longstanding, presumptively lawful measures are constitutional because they do not burden Second Amendment-protected conduct. *Torres,* 911 F.3d at 1258. In other words, if the challenged gun control measure is a longstanding, presumptively lawful regulation, the challenge fails at step one.

AB 286's basic requirement is that functioning firearms be serialized. AB 286, §§ 4-5. That requirement is a longstanding, presumptively lawful regulation. Many of the "longstanding" regulations identified in *Heller* were established by the exact same law that established the federal serialization requirement. Gun Control Act of 1968, Pub. L. 90-618, § 102, 82 Stat. 1213, 1220-21, 1223; *see NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196-97 (5th Cir. 2012) (collecting cases). If those other measures are longstanding and presumptively valid, so is a serialization requirement.

AB 286 keeps faith with longstanding, presumptively valid laws. The historical record is replete with examples of colonial gun control laws tracking and restricting the possession of firearms. *NRA*, 700 F.3d at 200. Like those laws, AB 286 is intended to ensure that firearm ownership can be traced and to help prevent those who are barred from possessing a firearm from buying one. *May 11 Senate Hearing*, *supra*, at 1:14:07 to 1:14:36 (statement of Assemb. Jauregui).

AB 286 does not burden Second Amendment-protected conduct. That is because it does not interfere with the right to "defense of hearth and home." *Chovan*, 735 F.3d at 1138 (quoting *Heller*, 554 U.S. at 635). Neither of the individual Plaintiffs contend that they will lack firearms to defend his home. *See* ECF No. 1 at ¶¶85-87 and 99-101. Plaintiffs also do not contend that ghost guns have advantages over serialized firearms – for example, that they are easier to use or more accurate – in terms of home defense. *Id*.

Plaintiffs allege that AB 286 burdens their right to either "self-manufacture" firearms or sell kits to allow others to "self-manufacture" firearms. *Id*. at ¶¶ 83 and 99-100. But they never allege that self-assembling unserialized firearms is necessary to home defense. *See id*. In any event, AB 286 does not bar self-assembling firearms. It bars only self-assembling a firearm that does not have a serial number. AB 286, § 4(1).

Because AB 286 does not burden Second Amendment-protected conduct, this Court need not reach step two. But if it does, it should apply intermediate scrutiny and uphold AB 286.

. . .

### 2.  AB 286 passes the applicable level of scrutiny

Intermediate scrutiny is the default level of scrutiny for Second Amendment cases. *See Silvester v. Harris*, 843 F.3d 816, 822-823 (9th Cir. 2016) (collecting cases). Strict scrutiny applies only in the rare case where a measure "implicates the core of the Second Amendment right and severely burdens that right." *Id.* at 821.

As the State Defendants have already explained, AB 286 does not implicate the core Second Amendment right of home defense. That is why the Third Circuit applied intermediate scrutiny in a challenge to the federal law that criminalized possessing a firearm with an obliterated serial number. *Marzzarella*, 614 F.3d at 97. That federal law is like AB 286 because it is also intended to ensure that guns used in crimes are traceable by way of serial number. *Id.* at 98.

<u>Intermediate scrutiny</u>: A statute is constitutional under intermediate scrutiny as long as (1) the State's stated goal is "significant, substantial, or important" and (2) there is a "reasonable fit" between the statute and the State's goal. *Silvester*, 843 F.3d at 821-22. Intermediate scrutiny is not a strict test, and it does not require that the State choose "the least restrictive means of furthering a given end." *Silvester*, 843 F.3d at 827.

The Ninth Circuit has already held that "preserving the ability of law enforcement to conduct serial number tracing – effectuated by limiting the availability of untraceable firearms – constitutes a substantial or important interest." *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir. 2018). Thus, AB 286 satisfies the first requirement of intermediate scrutiny.

AB 286 is a reasonable fit with that important goal. *Marzzarella*, 614 F.3d at 98 (holding that "[r]egulating the possession of un[serialized] firearms" fits "closely with the interest in ensuring the traceability of weapons"). It "reaches only conduct creating a substantial risk of rendering a firearm untraceable." *Id.* It does not prevent any Nevadan who is legally permitted to obtain a firearm to buy a serialized firearm (or assemble one starting with a serialized receiver) for home defense.

<u>Strict scrutiny</u>: Even if this Court applied strict scrutiny to AB 286, it would still pass constitutional muster. A firearms law passes strict scrutiny if it is "narrowly tailored

to serve a compelling state interest." *Marzzarella*, 614 F.3d at 99. Crime prevention and investigating gun violence are compelling interests. *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 749 (2010)).

By banning untraceable firearms and their components, AB 286 is narrowly tailored to accomplishing those compelling interests. AB 286 applies at both ends – by making it more difficult for prohibited persons to obtain firearms, and by proscribing possession of a firearm that would be untraceable if used in a crime. And it does so in a strikingly narrow way, leaving the gamut of lawful serialized firearms available to Nevadans for home defense. *Marzzarella*, 614 F.3d at 100.

### B. Plaintiffs' takings claim deserves dismissal

#### 1. Injunctive relief is not available for takings claims in Nevada because damages are available

Plaintiffs seeks injunctive relief for the purported violation of the Fifth Amendment's takings clause. ECF No. 1, ¶ 160. But the takings clause cannot be the basis for injunctive relief where damages are available to compensate the taking. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2176 (2019). Damages are available in Nevada because a plaintiff can bring an inverse condemnation action. *See, e.g.*, *McCarran Int'l Airport v. Sisolak*, 137 P.3d 1110, 1118, 1130 (Nev. 2006).

#### 2. No compensation is due for restrictions on personal property

Plaintiffs' takings claim also fails on the merits. A government does not need to compensate owners when it prohibits a type of personal property through a valid law. *Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 366-67 (4th Cir. 2020), *cert. denied*, No. 20-855, 2021 WL 1725174 (U.S. May 3, 2021). For example, in *Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146 (1919), the Supreme Court held that no compensation was due to distillers and jobbers after alcohol was prohibited. *Id.* at 157-58. The plaintiffs there had sufficient time to dispose of their alcohol inventory, so there was no taking. *Id.* A raft of federal courts have likewise concluded that the ATF did not effect a taking when they banned a previously legal firearm component called bump stocks. *Guedes v. Bureau of*

*Alcohol, Tobacco, Firearms, & Explosives*, __ F. Supp. 3d __, No. 18-cv-2988, 2021 WL 663183, at *10 (D.D.C. Feb. 19, 2021) (collecting cases), *appeal filed*, No. 21-5045 (D.C. Cir. filed Feb. 23, 2021).

That rule applies here. AB 286 is a valid law prohibiting two types of personal property – ghost guns and unserialized receivers. Just as no compensation was due when alcohol and bump stocks were prohibited, no compensation is due here.

Alleging to the contrary, Plaintiffs liken AB 286 to government actions that effect a physical appropriation, deprivations of all economically beneficial use of property, and/or a permanent physical invasion of property. ECF No. 1 at ¶150. Plaintiffs' comparisons are off-base and not supported by legal authority.

AB 286 is not a "physical appropriation" because Nevada is not taking title to the prohibited items. That is why federal courts have rejected that exact argument in connection with bump-stock bans. *Md. Shall Issue*, 963 F.3d at 366; *McCutchen v. United States*, 145 Fed. Cl. 42, 54 (2019), *appeal filed*, No. 20-1188 (Fed. Cir. filed Nov. 27, 2019).

And while permanent physical invasions and complete deprivations of economically beneficial use can be categorical takings of *real* property, they are not categorical takings of *personal* property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027-28 (1992); *Md. Shall Issue v. Hogan*, 353 F. Supp. 3d 400, 413 (D. Md. 2018), *aff'd*, 963 F.3d 356. AB 286 affects only personal property, so those principles are irrelevant here.

## V. Conclusion

For these reasons, this Court should dismiss Plaintiffs' complaint.

DATED this 6th day of July, 2021.

               AARON D. FORD
               Attorney General

               By: */s/ Steve Shevorski*
                   Steve Shevorski (Bar No. 8256)
                   Chief Litigation Counsel
                   Jeffrey M. Conner (Bar No. 11543)
                   Deputy Solicitor General
                   Kiel B. Ireland (Bar No. 15368C)
                   Deputy Attorney General
                   *Attorneys for State Defendants*