UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROGER PALMER, *et al.*, | Case No. 3:21-cv-00268-MMD-WGC |
| Plaintiffs, | ORDER |
| v. | |
| STEPHEN SISOLAK, *et al.*, | |
| Defendants. | |

## I.  SUMMARY

Plaintiffs[1] challenge sections of the recently enacted Nevada Assembly Bill 286 ("A.B. 286") that prohibits certain acts relating to firearms not imprinted with serial numbers—commonly referred to as "ghost guns"—alleging that these sections violate the Second Amendment and the Fifth Amendment's Takings Clause. (ECF No. 1.) Before the Court is Plaintiffs' motion for a preliminary injunction (ECF No. 6 ("Motion")),[2] seeking to enjoin Defendants[3] from enforcing A.B. 286. Because Plaintiffs have not shown a likelihood of success on the merits of their claims—and as further explained below—Plaintiffs are not entitled to the extraordinary remedy of preliminary injunction. The Court will therefore deny Plaintiffs' Motion.

///

---

[1] Plaintiffs are Roger Palmer, Chad Moxley (together, "Individual Plaintiffs"), and the Firearms Policy Coalition, Inc. (collectively, "Plaintiffs").

[2] The Court has additionally reviewed the parties' corresponding responses and replies. (ECF Nos. 25, 28, 31, 32, 40.) The Court also heard arguments on the Motion on July 16, 2021 ("the Hearing"). (ECF No. 48.)

[3] Defendants are Nevada Governor Steven Sisolak; Attorney General Aaron Ford; Director of Public Safety George Togliatti; Division Administrator for Department of Public Safety's Records, Communications and Compliance Division Mindy McKay (together, "State Defendants"); Clark County Sheriff Joseph Lombardo; Clark County District Attorney Steven Wolfson; Douglas County Sheriff Daniel Coverley; and Douglas County District Attorney Mark Jackson (collectively, "Defendants").

## II. BACKGROUND

Plaintiffs Roger Palmer and Chad Moxley, both citizens of Nevada, own and possess multiple unserialized firearms and previously self-manufactured unserialized constituent parts. (ECF No. 1 at 5, 20-21, 24.) Palmer owns and possesses multiple uncompleted non-firearm objects and firearm building kits. (*Id.* at 21.) Moxley sells firearms and constituent firearm parts at local gun shows and seeks to continue selling unserialized firearms constituent parts and other non-firearm objects. (*Id.* at 23-24.) Moxley made arrangements prior to the enactment of A.B. 286 to attend six or more gun shows before the end of the year. (*Id.* at 23.) Palmer and Moxley are both members of the Firearms Policy Coalition, Inc. ("FPC"). (*Id.* at 20, 23.) FPC's stated purpose is to defend and promote Second Amendment rights to keep and bear arms. (*Id.* at 26.)

On June 7, 2021, Nevada's Governor Stephen Sisolak signed A.B. 286 into law. (*Id.* at 1.) At a May 11, 2021, pre-enactment hearing, Assemblywoman Sandra Jauregui—a sponsor of A.B. 286—made public statements about the law's purpose. (*Id.* at 17, 20, 33, 35.) With its enactment, A.B. 286 amended Chapter 202 of the Nevada Revised Statutes to prohibit "a person from engaging in certain acts relating to firearms which are not imprinted with a serial number under certain circumstances[.]" A.B. 286, 2021 Leg., 81st Sess. (Nev. 2021).

This litigation centers on certain sections A.B. 286 added to Chapter 202, which are as follows:

*Section 3* states in part that a person "shall not possess, purchase, transport or receive an unfinished frame or receiver[.]" *Id.* at § 3(1).

*Section 3.5* states in part that a person "shall not sell, offer to sell or transfer an unfinished frame or receiver[.]" *Id.* at § 3.5(1).

*Section 4* states in part that a person "shall not manufacture or cause to be manufactured or assemble or cause to be assembled a firearm that is not imprinted with a serial number" unless the firearm is: (a) rendered permanently inoperable, (b) an antique firearm, or (c) determined to be a collector's item. *Id.* at §§ 4(1); 4(1)(a)-(c).

2

*Section 5* states in part that a person "shall not possess, sell, offer to sell, transfer, purchase, transport or receive a firearm that is not imprinted with a serial number" unless the person is a (a) law enforcement agency, (b) firearms importer or manufacturer; or the firearm is: (a) rendered permanently inoperable, (b) manufactured before 1969, (c) an antique firearm, or (d) determined to be a collector's item. *Id.* at §§ 5(1); 5(1)(a)-(b).

*Section 5.5* further provides: "Nothing in the provisions of sections 3 to 5, inclusive, of this act shall be deemed to prohibit the sale of an unfinished frame or receiver or firearm that is not imprinted with a serial number to a firearms importer or manufacturer or a license dealer before January 1, 2022." *Id.* at § 5.5.

A person in violation of any part of §§ 3-5 is guilty of a gross misdemeanor for a first offense and a category D felony for a second or any subsequent offense. *Id.* at §§ 3-5. Sections 3 and 5 become effective on January 1, 2022. *Id.* § 10(2).

Plaintiffs seek a preliminary injunction to enjoin enforcement of A.B. 286 pending a decision on the merits.

**III.   LEGAL STANDARD**

"'An injunction is a matter of equitable discretion' and is 'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 32 (2008)). To qualify for a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm; (3) that the balance of equities favors the plaintiff; and (4) that the injunction is in the public interest. *Winter*, 555 U.S. at 20. "When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021) (parentheses in original). A plaintiff may also satisfy the first and third prongs under a "sliding scale" approach by showing serious questions going to the merits of the case and that a balancing of hardships tips sharply in plaintiff's favor. *All. for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1134-35 (9th Cir. 2011) (holding that the Ninth Circuit's "sliding scale" approach remains valid following the *Winter* decision).

## IV.     DISCUSSION

Plaintiffs contend A.B. 286 violates their rights under the Second Amendment and the Fifth Amendment's Takings Clause. The Court will first address Plaintiffs' Second Amendment arguments, then will address their Takings Clause arguments. Because the Court finds that Plaintiffs have failed to demonstrate a likelihood of success on the merits on either claim, the Court will deny the Motion.[4]

### A.     Second Amendment Claim

The Second Amendment expressly states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2008, the United States Supreme Court held in *District of Columbia v. Heller* that the Second Amendment protects the "individual right to keep and bear arms." 554. U.S. 570, 622. The "central component" of that right to bear arms is for self-defense, particularly defense of the home. *Id.* at 599, 628-29. However, the Court also cautioned that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and historically speaking "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.[5] The Court later held that the Second Amendment is also fully applicable to states and municipalities through the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010).

The Ninth Circuit has adopted a two-step framework to evaluate Second Amendment claims after *Heller* and *McDonald*, as exemplified in its recent decision in

---

[4]The Court notes that the equities and public interest considerations of the *Winters* factors weigh heavily in favor of State Defendants in light of their articulated objective of promoting public safety.

[5]In *Heller*, the Supreme Court indicated that determining the scope of the Second Amendment's protection requires a historical and textual analysis of the Amendment, *see id.* at 576-605, but the Court also declined to undertake an exhaustive historical analysis of the full scope of the Amendment, *see id.* 626-27.

4

*Young v. Hawaii*, 992 F.3d 765, 783-84 (2021) (en banc).[6] The two-step inquiry requires courts to ask (1) whether the challenged law burdens conduct protected by the Second Amendment and (2) if the law burdens protected Second Amendment conduct, then the second step requires determining the appropriate level of scrutiny and applying it to the challenged law. *See Young*, 992 F.3d at 783-84.

"The level of scrutiny depends upon (1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right." *Jackson*, 746 F.3d at 963 (internal quotes and citation omitted). Courts must look at the "historical understanding of the scope of the right." *Young*, 992 F.3d at 783 (quoting *Heller*, 554 U.S. at 625). A law that imposes a severe restriction on a core right, which destroys the protection of the Second Amendment, is "unconstitutional under any level of scrutiny." *Jackson*, 746 F.3d at 961 (citing *Heller*, 554 U.S. at 629). "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, [courts] may apply intermediate scrutiny." *Id.* "[A]ll forms of the [intermediate scrutiny] standard require (1) the government's stated objective to be significant, substantial, or important; and (2) a *reasonable fit* between the challenged regulation and the asserted objective." *Id.* at 965 (emphasis added) (quoting *Chovan*, 735 F.3d at 1129).

### 1.   Burden on Protected Conduct

Plaintiffs argue that the Court should evaluate the constitutionality of A.B. 286 with strict scrutiny because the rights guaranteed under the Second Amendment to bear arms has always included "the right to self-manufacture such arms." (ECF No. 6 at 10-12.) Because A.B. 286 infringes on that "core" right, Plaintiffs insist it is unconstitutional under any level of scrutiny. (*Id.* at 13-16.) State Defendants counter that A.B. 286 does not burden Second Amendment rights because it does not interfere with the right to self-defense in the home, nor does it strip persons from access to serialized firearms for

---

[6] *See also Silvester v. Harris*, 843 F.3d 816, 820-21 (9th Cir. 2016); *Peruta v. Cnty. of San Diego*, 824 F.3d. 919, 939 (9th Cir. 2016); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 960-61 (9th Cir. 2014); *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

defense of their homes.[7] (ECF No. 31 at 11.) Therefore, State Defendants assert that intermediate scrutiny should apply to A.B. 286. (*Id.*) The Court agrees with State Defendants.

The focus of the analysis as stated in *Heller* requires the Court to determine whether A.B. 286 burdens the "central component" of the right to bear arms for self-defense in the home. *See* 554. U.S. at 599, 628-29. As it stands, A.B. 286 regulates firearms that are not imprinted with serial numbers—the law therefore "does not interfere with the right to 'defense of hearth and home'" because Individual Plaintiffs' ability to use any and all serialized firearms to defend their homes remains unchanged. (ECF No. 31 at 11 (quoting *Heller*, 554 U.S. at 635).) *Cf. Jackson*, 746 F.3d at 968 ("A ban on the sale of certain types of ammunition does not prevent the use of handguns or other weapons in self-defense. The regulation . . . limits only the manner in which a person may exercise Second Amendment rights by making it more difficult to purchase certain types of ammunition.").

Moreover, A.B. 286 does not completely prohibit, as Plaintiffs suggest, the right to self-manufacture firearms but rather prohibits self-manufacturing of *unserialized* firearms. A.B. 286 § 4(1) ("a person shall not manufacture . . . a firearm that is not imprinted with a serial number"); *see also* § 4(1)(a)-(c), (exceptions). Under A.B. 286, Individual Plaintiffs are not stripped of an opportunity to self-manufacture and assemble firearms and constituent parts so long as they are serialized or fall within § 4(1)(a)-(c) exceptions. Plaintiffs affirmed this point at the Hearing when they stated that a person could still acquire a serialized firearm from a licensed seller under A.B. 286 for defense of self and home. (ECF No. 48.) Accordingly, the Court finds that A.B. 286 does not severely burden Second Amendment protected conduct, but merely regulates it. Intermediate scrutiny rather than strict scrutiny is therefore appropriate for the Court's

---

[7]State Defendants dispute that A.B. 286 burdens Second Amendment protected conduct because the requirement that firearms be serialized is a "longstanding, presumptively lawful regulation." (ECF No. 31 at 10-11.) In light of the Supreme Court's decision in *Heller* to not undertake an exhaustive historical analysis of the full scope of the Second Amendment, and in consideration of the limited historical facts presented, this Court declines to consider this argument at this early phase of the litigation.

analysis of A.B. 286. *See Young*, 992 F.3d at 784 (stating that intermediate scrutiny applies in cases where Second Amendment rights are "affected in some lesser way").

### 2. Stated Objective and Reasonable Fit

Plaintiffs argue that, even if the Court applies intermediate scrutiny, A.B. 286 is unconstitutional because the restraint must be reasonably proportional and closely drawn to the government's interests. (ECF No. 6 at 15.) As such, Plaintiffs assert that A.B. 286 does not meet this requirement because it is a blanket ban on unserialized firearms and constituent parts. (*Id.* at 15-16.) State Defendants counter that A.B. 286 survives intermediate scrutiny because the law is a "reasonable fit" for the important government goal of preserving the ability of law enforcement to conduct firearm tracing by limiting the availability of non-traceable firearms. (ECF No. 31 at 12.) The Court again agrees with State Defendants.

In analyzing the first prong of intermediate scrutiny review, the Court must determine whether the government's stated objective is significant, substantial, or important. *See Jackson*, 746 F.3d at 965. State Defendants cite to a congressional report that concludes unserialized firearms are a present and increasing threat to public safety because they present a "homeland security challenge" and they "hamstring[ ] law enforcement's ability to investigate crimes committed with untraceable weapons." (ECF No. 31 at 7 (quoting H.R. Rep. No. 116-88, pt. 1, at 2 (2019).) State Defendants further note that law enforcement agencies recovered nearly 24,000 privately made firearms, without serial numbers on the frame or receiver, from crime scenes between 2016 and 2020. (*Id.* (citing Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27720,27722 (May 21, 2021) (to be codified at 27 C.F.R. pts. 447, 478, 479)). The Court in considering the government's stated objectives will not impose "an unnecessarily rigid burden of proof . . . so long as whatever evidence the [government] relies upon is reasonably believed to be relevant to the problem that the [government] addresses." *Jackson*, 746 F.3d at 965 (quoting *Renton v. Playtime Theatres*, 475 U.S. 41, 50-52 (1986)).

Here, A.B. 286 prohibits "a person from engaging in certain acts relating to firearms which are not imprinted with a serial number." A.B. 286, 2021 Leg., 81st Sess. (Nev. 2021). When the Nevada Legislature considered A.B. 286, Assemblywoman Sandra Jauregui—a sponsor of the Bill—echoed Congress' concerns when she stated that unserialized firearms are a threat to public safety because they circumvented background checks and they are untraceable if used in a crime. (ECF No. 31 at 7 (citing *Prohibits Certain Acts Relating to Firearms: Hearing on A.B. 286 Before Senate Comm. on Judiciary*, 81st Session (May 11, 2021) (statement of Sandra Jauregui, Assemblywoman)). Moreover, Assemblywoman Jauregui "explained that ghost guns are an especially acute threat to Nevada because one of the largest unfinished receiver kit companies in the nation, Polymer80, Inc. is based [in Nevada]." (*Id.*)

The Court finds that public safety is an important government interest, and "it is self-evident." *Chovan*, 735 F.3d at 1139; *see also Jackson*, 746 F.3d at 965. Moreover, the government's interest in preserving law enforcement's ability to investigate crimes committed with untraceable weapons is also a substantial and important government interest. *See Pena v. Lindley*, 898 F.3d 969, 981-82 (9th Cir. 2018) (holding that a California law requiring new models of semiautomatic pistols to be imprinted with characters, including a serial number, passed constitutional muster under intermediate scrutiny because "preserving the ability of law enforcement to conduct serial number tracing—effectuated by limiting the availability of untraceable firearms—constitutes a substantial or important interest."). As such, State Defendants have sufficiently shown that the government's objectives in enacting A.B. 286 are substantial and important, thus satisfying the first prong of intermediate scrutiny.

The second prong of intermediate scrutiny requires a determination that A.B. 286's regulations be a "reasonable fit" with the government's asserted objectives.[8]

---

[8]At the Hearing, Plaintiffs argue that A.B. 286 must be "narrowly tailored" to the government's stated interest. But Plaintiffs appear to apply strict scrutiny. While courts have used various terminology to describe the intermediate-scrutiny standard, as discuss above, the government must show "a *reasonable fit* between the challenged regulation and asserted objective" under intermediate scrutiny. *Jackson*, 746 F.3d at

8

*Jackson*, 746 F.3d at 965. States Defendants articulate that A.B. 286 "addresses the threat posed by unserialized firearms and firearm components." (ECF No. 31 at 7-8.) A plain text reading of A.B. 286 affirms that it does so by prohibiting the possession and sale of firearms and constituent parts that lack serial numbers. It also prohibits a person from manufacturing or assembling an unserialized firearm unless it falls within a categorical exception, *see* § 4(1)(a)-(c). Moreover, A.B. 286 prohibits the possession of unserialized firearm unless an exception applies, *see* § 5(1)(a)-(b).

Because A.B. 286 targets only unserialized firearms that are not within a categorical exception, that bypass background checks by virtue of self-assembly, and that are untraceable without a serial number, the Court finds that A.B. 286 is a reasonable fit for achieving the government's objectives of decreasing the threat that unserialized firearms pose to public safety and preserving law enforcement's ability to trace firearms related to violent crimes. Accordingly, State Defendants have met their burden under the second prong and A.B. 286 satisfies intermediate scrutiny.

Plaintiffs challenged State Defendants' asserted objectives, contending that State Defendants offered no evidence that tracing firearms reduces crimes or increases public safety. (ECF No. 40 at 9.) Similar to the Court's finding above that "it is self-evident" that public safety is an important government interest, it is a matter of common sense that tracing of firearms aid in solving crimes which enhances public safety. Since the Gun Control Act of 1968 ("GCA") began to require licensed importers and manufacturers to identify each firearm with a serial number, *see* Identification Markings Placed on

---

965 (quotes omitted, emphasis added). Intermediate scrutiny is not a strict test, and the Ninth Circuit has said that "intermediate scrutiny does not require the least restrictive means of furthering a given end." *Silvester*, 843 F.3d at 827 (quoting *Jackson*, 746 F.3d at 966); *see also Altman v. Cnty. of Santa Clara*, 464 F. Supp. 3d 1106, 1129 (N.D. Cal. 2020 ("The Ninth Circuit, however, does not require narrow tailoring for firearm regulations subject to intermediate scrutiny.").) Accordingly, A.B. 286 need not be narrowly tailored to the government's stated interest.

Additionally, Plaintiffs further argue that less burdensome means of regulating self-manufacture firearms, such as background checks, are available and that there are less restrictive means of requiring serialization. (ECF No. 40 at 8, 11.) But "intermediate scrutiny does not require the least restrictive means of furthering a given end." *Jackson,* 746 at 969.

Firearms, 66 Fed. Reg. 40,596, 40,597 (Aug. 3, 2001) (codified at 27 C.F.R. pt. 178.92), firearms tracing has become a critical tool for modern firearms investigations and prosecution. In addition to the serial number, GCA's requirement that records be kept of the acquisition and dispositions of the firearm, along with its description, enables firearms to be uniquely identifiable and traceable. *Id.*; *see also* GCA, § 101, Pub. L. No. 90-618, 82 Stat. 1223 (codified as amended at 18 U.S.C. § 923(i)) (adding a recordkeeping requirement to existing regulatory scheme). When a firearm is stolen, the lawful owner files a police report that includes a serial number and description of the firearm. When the firearm reappears at a crime scene, investigators can accurately trace the firearm's history thereby determining if the firearm was stolen. These protections aid law enforcement in prosecuting persons who are in possession of a stolen firearm and countless other crimes.[9] Serialization and identification of firearms are therefore crucial to public safety. As such, the Court finds that State Defendants need not offer more specific evidence to show that tracing firearms reduces crime or increases public safety as common sense dictates otherwise.

In sum, Plaintiffs have not met their burden to show a likelihood of success on the merits of their Second Amendment claim to warrant a preliminary injunction.

### B.   Fifth Amendment's Takings Clause

The Takings Clause of the Fifth Amendment provides: [N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Clause is made applicable to states through the Fourteenth Amendment. *See Chi., B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897). A physical taking of property occurs "[w]hen the government physically takes possession of an interest in the property for some public purpose." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). When a government regulation of private property becomes so

---

[9] *See* Andrew W. Eichner, *Crime in the Age of Printable Guns: Methodologies and Obstacles to Prosecuting Federal Offenses Involving 3D-Printed Firearms*, 45 Vt. L. Rev. 189, 212-15 (2020) (discussing firearm tracing as a solution to deterring gun violence).

onerous and thus "goes too far[,] it will be recognized as a taking." *See Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415-16 (1922).

The Supreme Court has articulated two guidelines relevant to determining whether a government regulation is onerous. *See Murr v. Wisconsin*, 137 S. Ct. 1933, 1942-43 (2017). "First, with certain qualifications . . . a regulation which denies all economically beneficial or productive use of [property] will require compensation under the Takings Clause. Second, when regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on *a complex of factors*, including (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (2) the character of the governmental action." *Id.* (emphasis added and quotation marks omitted) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)).

### 1. Regulatory Taking

Plaintiffs argue that enforcement of A.B. 286 would regulate the firearms and parts to such an extent that it would deprive persons of its use and economic benefits in violation of the Takings Clause. (ECF No. 6 at 16.) State Defendants counter that the government need not provide a just compensation when A.B. 286 is a valid law prohibiting possession of unserialized firearms and constituent parts. (ECF No. 31 at 13.) The Court finds State Defendants' argument more persuasive.

A.B. 286 prohibits possession of firearms and its constituent parts not imprinted with serial numbers. A.B. 286 requires that persons in Nevada sell the disputed items to a firearms importer, manufacturer, or a license dealer before January 1, 2022. It does not, however, prohibit persons from the use or benefit of those items outside of Nevada before or after January 1, 2022. Nor does A.B. 286 prohibit unserialized firearm possession if it falls within § 5(1)(a)-(b) exceptions. As such, the Court finds that A.B. 286 does not deny all economically beneficial or productive use of unserialized firearms

///

and constituent parts as Plaintiffs contend. The Court therefore must turn to the "complex factors" as originally set forth in *Penn Cent. Transp. Co.*, 438 U.S. at 124.

In their Motion, Plaintiffs state that A.B. 286 "has destroyed or significantly diminished the value of the property to any would-be purchasers and has thus destroyed the very market to which it has relegated the affected citizens." (ECF No. 6 at 17.) Moxley—a seller of firearms and constituent parts—declares that he had made arrangements to attend six gun shows by the end of the year whereby he would have "made available for sale and sold firearm components now prohibited from commercial sale under [A.B. 286]." (ECF Nos. 1 at 23; 6-2 at 3.)

While the Court is sympathetic to the economic loss Plaintiffs assert, it is not clear based on the record the extent or certainty of that economic loss. Because A.B. 286 provides an approximate 10-month period for persons to sell unserialized firearms and constituent parts to firearms importers, manufacturers, or licensed dealers beginning June 7, 2021, the possibility of recouping a potential economic loss was—and remains as of the date of this order—possible. In the same vein, nothing in A.B. 286 prohibits Moxley and others similarly situated from selling unserialized firearms and constituent parts at gun shows or to individuals outside of Nevada where the value will likely not be impacted by A.B. 286 to recoup any alleged economic loss. Therefore, the economic impact of A.B. 286 and the extent to which A.B. 286 interferes with distinct investment-backed expectations remains undetermined. The Court will next turn to "the character of the governmental action."

As stated previously, A.B. 286 was enacted to ensure public safety and preserve the ability of law enforcement to investigate crimes through firearm tracing. Without serial numbers, firearms and constituent parts circumvent and bypass background checks. Inherent in State Defendants' "valid law" counterargument is that A.B. 286 is an appropriate exercise of the government's police power.

The Court agrees with State Defendants that A.B. 286 is a valid exercise of the government's police power. The police power exception to the Takings Clause provides

that "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking." *Mugler v. Kansas*, 123 U.S. 623, 668 (1887). "If [an] ordinance is otherwise a valid exercise of the [government's] police powers, the fact that it deprives the property of its most beneficial uses does not render it unconstitutional." *Goldblatt v. Hempstead,* 369 U.S. 590, 592 (1962) (collecting cases). Public safety and the importance of firearm tracing necessitates the prohibition of Individual Plaintiffs' unserialized firearms and constituent parts at issue, and thus not a taking.

Moreover, the Court is unaware of—and the parties have not pointed to—any binding Ninth Circuit case explicitly discussing police power exception to the Takings Clause where government regulates firearms.[10] However, several other courts have applied this principle in finding that firearm regulations do not constitute a taking. *See Adkins v. United States*, 82 Fed. Cl. 619, 623-24 (2008) (holding that prohibition on the sale of machine guns to anyone other than law enforcement agencies did not constitute a physical or regulatory taking); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) (holding that a statue requiring machine guns denied registration be sold, surrendered, or disposed, was a valid exercise of police power thereby not a taking); *Rupp v. Becerra*, Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138451, *8-*9 (C.D. Cal. May 9, 2018) (dismissing a Takings claim on the grounds that a California prohibition on certain weapons represented an exercise of police power and not a taking). Accordingly, and in consideration of the previous complex factors discussed herein, the Court finds that A.B. 286 does not constitute a regulatory taking.

///

///

---

[10]The Court notes that the Ninth Circuit was presented with a similar Takings claim in *Duncan v. Becerra*, 742 F. App'x 218 (9th Cir. 2018). That case, however, is not binding precedent on this Court. Moreover, the Ninth Circuit affirmed the district court's findings on a deferential abuse of discretion standard. The Court finds the guidance from *Duncan* inconclusive as applied to the facts of this case.

13

### 2. Physical Taking

Plaintiffs also argue that A.B. 286 is "an unconstitutional deprivation of their property interest" in violation of the Fifth Amendment's Takings Clause by requiring unserialized firearms and constituent parts to be sold or transferred. (ECF No. 6 at 16.) Plaintiffs further argue that the government has a duty to provide just compensation and that just compensation is impossible through "any government-compelled sale." (*Id.*) State Defendants counter that the government is not taking title to the property at issue. (ECF No. 31 at 13.) The Court is not persuaded that A.B. 286 is a physical taking that would require the government to provide just compensation.

The Takings Clause expressly prohibits the taking of "private property . . . *for public use, without just compensation.*" U.S. Const. amend. V (emphasis added). Here, §§ 3 and 5 of A.B. 286—prohibiting the possession of unserialized firearms and constituent parts—will become effective on January 1, 2022. Nowhere in A.B. 286 does it expressly state, nor can it be implied, that the government is compelling the conveyance of the disputed property for public use. Nor are persons denied possession or use of unserialized firearms, if they or the disputed property, fall within an exception as set forth in § 5(1)(a)-(b). Additionally, pursuant to § 5.5, persons in Nevada can sell the disputed property to a firearms importer, manufacturer, or a license dealer prior to January 1, 2022, but the value for the property is paid by the buyers and not the government. As such, the Court does not find that the government is physically appropriating Individual Plaintiffs' property, or property of persons similarly situated, to constitute a physical taking.

The Court's analysis would not change even if A.B. 286 did authorize a physical taking. In contrast to situations where a taking is for a public use under the government's eminent domain power, just compensation is not required when the government uses its police power to prevent a perceived public harm. *See, e.g.*, *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992) (discussing eminent domain); *Mugler*, 123 U.S. at 668-669 (discussing police power exception). To their own

detriment, Plaintiffs point out that the government is not providing a just compensation and a government-compelled sale cannot fulfill this requirement. (ECF No. 6 at 16-17.) This further suggests that A.B. 286 is more appropriately analyzed under a regulatory rather than a physical taking, and, as the Court discussed above, that argument is legally infirm.

Accordingly, the government cannot be said to be engaging in a physical or regulatory taking of Plaintiffs' property in violation of the Takings Clause by virtue of enacting and enforcing A.B. 286. Because Plaintiffs have not shown a likelihood of success on the merits with respect to their Fifth Amendment Takings Clause claim, Plaintiffs are not entitled to a preliminary injunction.

**V.      CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion and the issues before the Court.

It is therefore ordered that Plaintiffs' motion for a preliminary injunction (ECF No. 6) is denied.

DATED THIS 26th Day of July 2021.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE