AARON D. FORD
  Attorney General
Steve Shevorski (Bar No. 8256)
  Chief Litigation Counsel
Jeffrey M. Conner (Bar No. 11543)
  Deputy Solicitor General
Kiel B. Ireland (Bar No. 15368C)
  Deputy Attorney General
Office of the Attorney General
555 E. Washington Ave, Ste. 3900
Las Vegas, NV 89101
(702) 486-3420 (phone)
(702) 486-3773 (fax)
cnewby@ag.nv.gov
sshevorski@ag.nv.gov
kireland@ag.nv.gov

*Attorneys for State Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROGER PALMER; CHAD MOXLEY; and FIREARMS POLICY COALITION,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHEN SISOLAK, Governor of Nevada; AARON FORD, Attorney General of Nevada; GEORGE TOGLIATTI, Director of the Nevada Department of Public Safety; MINDY MCKAY, Administrator of the Records, Communications, and Compliance, Division of the Nevada, Department of Public Safety; JOSEPH LOMBARDO, Sheriff of Clark County, Nevada; STEVEN WOLFSON, District Attorney of Clark County, Nevada; DANIEL COVERLEY, Sheriff of Douglas County, Nevada; and, MARK JACKSON, District Attorney of Douglas County, Nevada,<br><br>Defendants. | Case No. 3:21-cv-00268-MMD-WGC<br><br>**STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS** |

Defendants Stephen Sisolak, Aaron D. Ford, George Togliatti and Mindy McKay (collectively, the "State Defendants"), by and through counsel, file this reply supporting their motion to dismiss the complaint, ECF No. 34.

///

## I. Introduction

This Court should dismiss the complaint with prejudice. Its order denying Plaintiffs' motion for a preliminary injunction already determined the legal questions necessary to grant the motion to dismiss. This Court ruled that Assembly Bill 286 ("AB 286") passed intermediate scrutiny because it constitutes a reasonable fit with the important government objective of preventing and prosecuting gun crime. ECF No. 51, at 7. And it concluded that AB 286 did not effect a regulatory taking or a physical taking. *Id.* at 11, 14.

Those were purely legal determinations based on the same authorities at issue in the current motion – AB 286's text, its legislative history and official federal government reports on ghost guns. Plaintiffs point to no allegations in the complaint that would demand a different result from the one on their motion for a preliminary injunction. Nor do they even attempt to rebut this Court's conclusions or the caselaw that it relied on.

Instead, they ask this Court to take the role of the Nevada Legislature and replace AB 286 with California and Connecticut's ghost-gun regulatory scheme instead. Nothing in the Constitution requires Nevada to copy California or Connecticut's chosen means for regulating untraceable firearms. Plaintiffs' request is as baseless as their other already-rejected arguments. Dismissal is proper.[1]

## II. Relevant background

### A. Plaintiffs' brief shows how narrow AB 286's effect is

Plaintiffs describe the "net effect" of AB 286 as "a blanket prohibition against all self-built modern operable firearms." ECF No. 53, at 5. That shows just how narrow AB 286 is.

AB 286 does not affect the tens of thousands of serialized firearms sold in Nevada each year. *See* FBI, *NICS Firearm Checks: Year by State/Type* 3-5 (2021), https://bit.ly/3z3Ev6T (showing that, on average, over 120,000 background checks were

---

[1] All the authorities cited by the State Defendants are matters of public record that may be considered in ruling on the motion to dismiss. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1006, 1016 n.9 (9th Cir. 2012).

performed in connection with retail firearms sales in 2018 through 2020).[2] It does not affect self-built antique firearms or collector's items, curios and relics. AB 286, § 4(1)(b)-(c). And it does not affect inoperable firearms (for example, inoperable firearms assembled for pleasure by a hobbyist). *Id.* § 4(1)(a).

But even Plaintiffs' narrow conception of AB 286 overstates its reach. AB 286 does not bar "all self-built modern operable firearms." Nevadans are free to assemble modern, operable guns, so long as they start from a serialized receiver and the resulting gun has a serial number. *See* AB 286, § 4.

Plaintiffs claim in their brief that self-assembly kits cannot be serialized under federal law. ECF No. 53, at 10, 15. But as long as the receiver is sufficiently finished, it can and must be serialized. *See* Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27720, 27726 & n.42 (proposed May 21, 2021) (to be codified at CFR pts. 447, 478-79).[3] A person interested in assembling his own gun can start with that serialized receiver and go from there.

### B. Neither the complaint nor Plaintiffs' brief points to a single benefit that ghost guns offer for home defense

*Heller v. District of Columbia*, 554 U.S. 570 (2008), identified the core Second Amendment right as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *Heller*, 554 U.S. at 635). Yet Plaintiffs never cite any benefit ghost guns have for exercising that core right. On the contrary, both the complaint and their brief indicate that handguns and AR-15-style rifles assembled from ghost gun kits are indistinguishable from professionally manufactured versions for home-defense purposes. *See* ECF No. 1, ¶ 84; ECF No. 53, at 6-7. In other words, the serialized firearms available across Nevada are just as effective for home defense as the ghost guns targeted by AB 286.

---

[2] This figure was calculated by adding together the yellow "handgun," "long gun," "*other" and "**multiple" columns for each year, and then averaging the three years.

[3] Generally, a receiver that is more than 80% finished is considered to need a serial number, while a so-called "80% receiver" does not need a serial number. *See* Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27726 n.42.

### C. This Court denied Plaintiffs' motion for a preliminary injunction based on the same considerations present here

Plaintiffs filed a motion for a preliminary injunction premised on their Second Amendment and takings claims. ECF No. 6, at 3. This Court denied the motion. *Id.* at 1.

This Court first concluded that AB 286 passes intermediate scrutiny. ECF No. 51, at 7. Relying on a report from the U.S. House Committee on Homeland Security and a Bureau of Alcohol, Tobacco, Firearms, Explosives (the "ATF") notice of proposed rulemaking, it determined that AB 286 represented a reasonable fit with an important government objective. ECF No. 51, at 7-10. It explained that those federal authorities and AB 286's legislative history were a sufficient basis for showing that the law was constitutional and "more specific evidence" on the effectiveness of AB 286 was not necessary. *Id.* at 10.

This Court also concluded that AB 286 does not violate the Takings Clause. Based on AB 286's text and prior precedent, it determined that AB 286 does not amount to a regulatory taking. ECF No. 51, at 11-13. It further determined that the plain language of AB 286 showed that it did not authorize a "physical taking" of Plaintiffs' property. *Id.* at 14-15.

## III. Restated legal standard

A complaint can survive a motion to dismiss only if it contains sufficient factual allegations to make out a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009). While factual allegations must be assumed to be true at this stage, this Court need not accept the complaint's legal conclusions. *Id.* at 678.

Plaintiffs argue for a more "[l]enient" standard under which their complaint would survive "unless it appears beyond doubt that [they] can prove no set of facts in support of [their] claim." ECF No. 53, at 1-2. But that argument relies on *Conley v. Gibson*, 355 U.S. 41 (1957), and its progeny. *See id.* Those cases are no longer good law. *Henry v. Adventist Health Castle Med. Ctr.*, 970 F.3d 1126, 1132 (9th Cir. 2020), *cert. pet. docketed* No. 20-869 (U.S. filed Dec. 30, 2020). To proceed past the motion to dismiss stage, Plaintiffs must

/ / /

satisfy the "more stringent" plausibility standard. *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1066 (N.D. Cal. 2009).

## IV. Argument

### A. AB 286 is consistent with the Second Amendment

Plaintiffs once again largely ignore, *see, e.g.*, ECF No. 54, at 8-9, the two-step framework we are bound to apply to Second Amendment claims, *see* ECF No. 51, at 4-5 (collecting cases). If the challenged law does not "burden conduct protected by the Second Amendment," then the inquiry ends. *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016). If it does, then the law is evaluated under the appropriate level of scrutiny. *Id.* AB 286 is constitutional either way: it does not burden protected conduct and it passes intermediate scrutiny.

#### 1. AB 286 does not burden protected conduct because it does not interfere with Nevadans' ability to protect their home

AB 286 does not burden protected conduct, so there is no need to proceed to step two of the Second Amendment inquiry. *See Silvester*, 843 F.3d at 821. As noted above, the Second Amendment's core right is the use of firearms to protect the home. *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013); *accord* ECF No. 51, at 4 ("The 'central component' of th[e] right to bear arms is for self-defense, particularly defense of the home."). AB 286 does not burden that protected conduct. Nothing in the complaint indicates that Plaintiffs or anyone else legally entitled to purchase firearms will have difficulty obtaining and using them for home defense in the wake of AB 286. And according to Plaintiffs, AR-15s and handguns – which are still freely available in serialized form – are effective for home defense. ECF No. 53, at 6.

Plaintiffs try to paper over this fatal defect in their claim by asserting a "right to self-manufacture firearms." ECF No. 53, at 8. They do not cite a single case recognizing such a right. *See id.* at 8-9. Contrary to their argument, self-assembling unserialized guns is not "necessary to the realization of" the Second Amendment's core right. *See id.* Again, serialized firearms remain available in stores across the State to allow Nevadans to

exercise the core right to use firearms for home defense. And, in any event, AB 286 does not ban self-assembling a gun, as long as the underlying receiver is serialized.

        **2.    If this Court reaches step two, AB 286 passes intermediate scrutiny**

            **a.    AB 286 presents a reasonable fit with the important objective of preventing and prosecuting gun crime**

If the analysis proceeds to step two, this Court has already determined that intermediate scrutiny is the correct level of scrutiny. ECF No. 51, at 6-7. In the firearms context, a regulation passes intermediate scrutiny if the government's objective is "significant, substantial, or important" and there is a "'reasonable fit' between the challenged regulation and the asserted objective." *Silvester*, 843 F.3d at 821-22. "The test is not a strict one." *Id.* at 827.

There can be no dispute that preventing and prosecuting gun crime is an important government objective. ECF No. 51, at 8 (collecting cases). AB 286 constitutes a reasonable fit with that important objective because it bans only unserialized guns and their components. Congress, the ATF and experts testifying to the Nevada Legislature in support of AB 286 all recognized that ghost guns and ghost gun kits undermine the government's ability to prevent and prosecute gun crime. ECF No. 35, at 5-6; *see* ECF No. 51, at 7-8. They undermine prevention because they do not require background checks. And they undermine prosecution because ghost guns are virtually untraceable. That is why this Court concluded – based on the same authorities cited in the motion to dismiss – that AB 286 passes intermediate scrutiny. ECF No. 51, at 9-10.

            **b.    Plaintiffs' contention that AB 286 is not a reasonable fit with its goals fails as a matter of law**

Plaintiffs' primary argument in response is that AB 286 is "pretextual." The complaint doesn't allege that the Nevada Legislature had a secret motive for passing AB 286. Instead, reading the complaint and Plaintiffs' brief together, it is apparent that Plaintiffs' argument is merely that AB 286 is not a reasonable fit for its goal. ECF No. 53,

at 13. That is a question of law, *see Eldred v. Reno*, 239 F.3d 372, 374 (D.C. Cir. 2001), and this Court has already decided it against Plaintiffs, ECF No. 51, at 7. Nothing in Plaintiffs' argument suggests that there is some factual issue that warrants proceeding past the motion to dismiss stage.

Plaintiffs put much emphasis on the fact that California and Connecticut have adopted different measures to regulate ghost guns. ECF No. 53, at 13. But intermediate scrutiny does not require Nevada to adopt Plaintiffs' preferred regulatory scheme. *See Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018) ("[W]e must allow the government to select among reasonable alternatives in its policy decisions."), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020). The fact that other states have used other constitutional means to regulate ghost guns does not change the fact that AB 286 is a reasonable fit with its important objective.

Plaintiffs' argument that AB 286 fails intermediate scrutiny because it lacks the "required tailoring – much less *any* tailoring at all," ECF No. 53, at 17, contradicts the plain text of AB 286. The law is tailored to the problem of ghost guns: it "targets only unserialized firearms that are not within a categorical exception, that bypass background checks by virtue of self-assembly, and that are untraceable without a serial number." ECF No. 51, at 9. It does not affect the tens of thousands of serialized firearms sold on a yearly basis in Nevada. Even if there were a less-restrictive means of regulating ghost guns, intermediate scrutiny does not demand the use of the least-restrictive means. *Silvester*, 843 F.3d at 827.

### c.  Ghost guns present a real threat that is alleviated by AB 286

Plaintiffs rely on cases from outside the firearms context to argue that the State Defendants must also show that "the recited harms are real" and that AB 286 "will in fact alleviate these harms." ECF No. 53, at 17 (quoting *Doe v. Harris*, 772 F.3d 563, 577 (9th Cir. 2014)). The Ninth Circuit does not require that showing. *Pena*, 898 F.3d at 979-80.

But even if it did, the State Defendants *have* shown that the threat posed by ghost guns is real and that AB 286 alleviates it. The federal government has recognized that

ghost guns present a real threat. ECF No. 51, at 7 (citing H.R. Rep. No. 116-88, pt. 1, at 2 (2019); Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. at 27722). The Nevada Legislature heard expert testimony about specific shootings using ghost guns made by a Nevada-based company. *Minutes of Senate Committee on Judiciary*, 81 Sess., at 6-7 (May 11, 2021), https://bit.ly/3md2nBk [hereinafter "*Senate Judiciary Minutes*"]; *see* Robert Jablon, *LA Deputies Shot in Ambush Sue Nevada "Ghost Gun" Kit Maker*, L.V. Rev. J. (Aug. 10, 2021), https://bit.ly/3yVGbit. And the Third Circuit has recognized that the prevalence of unserialized firearms "makes it more difficult for law enforcement to gather information on firearms recovered in crimes." *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010).

As this Court explained, it is "common sense" that prohibiting a significant and growing source of untraceable firearms will help alleviate that threat. ECF No. 51, at 9-10. The Nevada Legislature heard and considered testimony on that specific issue in passing AB 286. *Senate Judiciary Minutes*, *supra*, at 3, 5. Nothing more was required. *See Pena*, 898 F.3d at 984.

### B. Plaintiffs' takings claim fails because no compensation is due when the government requires dispossession of personal property

#### 1. AB 286 does not appropriate Plaintiffs' property

The parties agree that where a government establishes "a regulation [that] results in a physical appropriation of property," it has effected a taking requiring compensation. ECF No. 53, at 22 (alteration in original). But that principle is inapplicable here because AB 286 does not appropriate Plaintiffs' property. It is therefore distinguishable from *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), where California had compelled private property owners to allow third parties to enter the property for public policy reasons. *Id.* at 2072. And from *Horne v. Department of Agriculture*, 576 U.S. 350 (2015), where the United States had outright appropriated a portion of the raisin crop each year. *Id.* at 354-55.

/ / /

Courts regularly find that laws that require dispossession of personal property – but not appropriation by the state – are not compensatory takings. The U.S. Supreme Court in *Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146 (1919), held that there was no taking when distillers and jobbers were required to dispose of their alcohol. *Id.* at 157-58. The D.C. Court of Appeals held that a law that required that certain machine guns be sold, surrendered or disposed of was not a taking. *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979); *see also* ECF No. 51, at 13 (citing and describing *Fesjian*).

As this Court has recognized, requiring dispossession is distinguishable from appropriation because requiring dispossession is not a "taking of private property for public use." ECF No. 51, at 14 (cleaned up) (quoting U.S. Const. amend. V). There is no *use* by the Nevada public when a ghost gun is rendered inoperable, destroyed or transferred to another state. AB 286, like other measures mandating dispossession, is therefore outside the text of the Takings Clause. *See id.*

Contrary to Plaintiffs' argument, ECF No. 53, at 21-22, the fact that the property was previously legal is irrelevant. Alcohol was legal prior to *Hamilton*, but the Supreme Court held that there was no taking there. *See* 251 U.S. at 157-58. More recently, myriad federal courts have concluded that the ATF did not effect a taking when it banned bump-stocks, a firearm component that had been legal until that point. *Guedes v. ATF*, __ F. Supp. 3d __, 2021 WL 663183, at *2, 10 (D.D.C. Feb. 19, 2021) (collecting cases). That is so even though the bump-stock ban – unlike AB 286 – did not allow owners to sell their bump-stocks or move them to another state. *Id.* at *2. Owners were instead required to surrender or destroy their bump-stocks within three months. *Id.*; *see* Bump-Stock-Type Devices, 83 Fed. Reg. 66514, 66514 (Dec. 26, 2018) (codified at CFR pts. 447-49).

### 2. AB 286 is not a per se taking

The government commits a per se taking where (a) it invades a property owner's land or (b) denies all economically beneficial use of the land. Plaintiffs argue that both types of per se takings occurred here. ECF No. 53, at 21-22. Wrong and wrong.

///

### a. AB 286 does not physically invade an interest in land

A physical invasion is recognized as a per se taking when the government physically invades *real* property (land, airspace and water). *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (citing installation of "cable facilities," invasion of airspace and imposition of a navigational servitude as examples of physical invasions). Plaintiffs cite no cases extrapolating this concept to personal property, and it is not clear how requiring dispossession of ghost guns represents Nevada's "inva[ding]" their property.

### b. AB 286 does not deny all economically beneficial use of land

Likewise, the denial of all economically beneficial use of property is a per se taking only when the property in question is land. Plaintiffs misleadingly quote the *Lucas* Court as stating that "'[r]egulations that prohibit all economically beneficial use' *of property* 'cannot be newly legislated or decreed (without compensation).'" ECF No. 53, at 21 (emphasis added). But the *Lucas* Court did not say "of property"; it defined this type of per se taking as "regulations that prohibit all economically beneficial use of *land*." 505 U.S. at 1029 (emphasis added). AB 286 does not deny anyone all economically beneficial use of *land*. *See Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 365-66 (4th Cir. 2020) (rejecting an attempt to extend this form of categorical takings to a firearms regulation), *cert. denied*, No. 20-855, __ S. Ct. __, 2021 WL 1725174 (2021).

What's more, the complaint does not allege facts showing that Plaintiffs have been deprived of "*all* economically beneficial uses." *See Lucas*, 505 U.S. at 1019. Plaintiffs allege only that "many" licensed firearms dealers will decline to buy unserialized firearms now, and that they will therefore "not garner the *fair* market value." ECF No. 34, ¶¶ 145-46. All means all. At best, Plaintiffs have attempted to allege a diminution in the value of the property, not that they were denied "all" economically beneficial use of it.[4]

///

---

[4] Plaintiffs also fail to acknowledge that their unserialized firearms would maintain their value if they removed them from Nevada. *See Fesjian*, 399 A.2d at 865-66 (finding no taking where owners could remove their firearms from the jurisdiction).

### 3. AB 286 is not a *Penn Central* taking

Plaintiffs argue in passing at the end of their brief that AB 286 constitutes a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). ECF No. 53, at 24. They do not even try to explain how their claim meets *Penn Central*'s multifarious test. *See id.*

This Court has already concluded that AB 286 is not a regulatory taking under the *Penn Central* factors. ECF No. 51, at 11-13. And the takings claim fails for the independent reason that the complaint's vague allegation that "many" dealers will resist buying ghost guns, ECF No. 1, ¶ 145, does not show a sufficient diminution in value to support a regulatory takings claim, *see MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127-28 (9th Cir. 2013) (holding that an 81% diminution in value was "insufficient to demonstrate a taking").

### C. Plaintiffs' request to amend their complaint is improper and should be denied

In a last-ditch effort to save this case, Plaintiffs ask that this Court grant them leave to amend their complaint. ECF No. 53, at 2. But in this District a request to amend the complaint must be accompanied by the "proposed amended pleading." LR 15-1. Plaintiffs did not attach any proposed amended pleading, so it is impossible to tell how the hypothetical new complaint could address the operative complaint's fatal defects.

It could not. For the reasons explained above, AB 286 does not violate the Second Amendment or the Takings Clause and any amendment would be futile.

///
///
///
///
///
///
///

## V. Conclusion

Banning unserialized, virtually untraceable firearms advances important public-safety interests without impacting the Second Amendment's core protection of the right of home defense. And no compensation is due when the government mandates dispossession of personal property. Those are purely legal conclusions that are ripe for determination on a motion to dismiss. This Court should dismiss the complaint with prejudice.

DATED this 23rd day of August, 2021.

                AARON D. FORD
                Attorney General

                By: /s/ *Kiel B. Ireland*
                    Steve Shevorski (Bar No. 8256)
                    Chief Litigation Counsel
                    Jeffrey M. Conner (Bar No. 11543)
                    Deputy Solicitor General
                    Kiel B. Ireland (Bar No. 15368C)
                    Deputy Attorney General

                *Attorneys for State Defendants*