1

2

3                          UNITED STATES DISTRICT COURT

4                               DISTRICT OF NEVADA

5                                      * * *

6    ROGER PALMER, *et al.*,                    Case No. 3:21-cv-00268-MMD-CSD

7                              Plaintiffs,       ORDER

     v.
8
     STEPHEN SISOLAK, *et al.*,
9
                               Defendants.
10

11   **I.      SUMMARY**

12          On June 10, 2021, Plaintiffs[1] initiated this action challenging sections of Nevada

13   Assembly Bill 286 ("A.B. 286"), which prohibits certain actions relating to firearms

14   commonly referred to as "ghost guns," as violating the Second Amendment and the

15   Fifth Amendment's Takings Clause. (ECF No. 1 ("Complaint").) Shortly after initiating

16   this action, Plaintiffs filed a motion for preliminary injunction to enjoin Defendants[2] from

17   enforcing A.B. 286. (ECF No. 6.) The Court held a hearing on that motion ("the

18   Hearing") and ultimately declined to enjoin Defendants because Plaintiffs had failed to

19   demonstrate a likelihood of success on the merits of their claims. (ECF Nos. 48, 51

20   ("Order").)

21          Defendants now move to dismiss this action under Rule 12(b)(6) for failure to

22   state a claim. (ECF No. 34 ("Motion")[3].) Because the Court agrees with Defendants for

23

24

25          [1]Roger Palmer, Chad Moxley, and the Firearms Policy Coalition, Inc. ("FPC")
     (collectively, "Plaintiffs").

26          [2]Remaining Defendants are Nevada Governor Steven Sisolak; Attorney General
     Aaron Ford; Director of Public Safety George Togliatti; Division Administrator for
27   Department of Public Safety's Records, Communications and Compliance Division
     Mindy McKay (collectively, "Defendants").
28
            [3]Plaintiffs oppose dismissal and Defendants filed a reply. (ECF Nos. 53, 57.)

1   the reasons articulated in the Court's Order, and as further explained below, the Court

2   grants Defendants' Motion.

3   **II.      BACKGROUND**

4   The following facts are adapted from the Complaint. (ECF No. 1.) Plaintiffs Roger

5   Palmer and Chad Moxley, both citizens of Nevada, own and possess multiple

6   unserialized firearms and previously self-manufactured unserialized component parts.[4]

7   (*Id.* at 5, 20-21, 24.) Moxley and Palmer are both members of the Firearms Policy

8   Coalition, Inc. ("FPC"). (*Id.* at 20, 23.) FPC's stated purpose is to defend and promote

9   Second Amendment rights to keep and bear arms. (*Id.* at 26.) Palmer owns and

10  possesses multiple uncompleted non-firearm objects and firearm building kits. (*Id.* at

11  21.) Moxley sells firearms and component firearm parts at local gun shows and seeks to

12  continue selling unserialized firearms, their component parts, and other non-firearm

13  objects. (*Id.* at 23-24.) Moxley made arrangements prior to the enactment of A.B. 286 to

14  attend six or more gun shows before the end of 2021. (*Id.* at 23.)

15  On June 7, 2021, Nevada's Governor Stephen Sisolak signed A.B. 286 into law.

16  (*Id.* at 2.) At a May 11, 2021, pre-enactment hearing, Assemblywoman Sandra

17  Jauregui—a sponsor of A.B. 286—made public statements about the law's purpose. (*Id.*

18  at 17, 20, 33, 35.) With its enactment, A.B. 286 amended Chapter 202 of the Nevada

19  Revised Statutes to prohibit "a person from engaging in certain acts relating to firearms

20  which are not imprinted with a serial number under certain circumstances[.]" A.B. 286,

21  2021 Leg., 81st Sess. (Nev. 2021).

22  This litigation centers on certain sections A.B. 286 added to Chapter 202, which

23  are as follows:

24  *Section 3* states in part that a person "shall not possess, purchase, transport or

25  receive an unfinished frame or receiver[.]" *Id.* at § 3(1).

26

27  ─────────────

28  [4]Plaintiffs use both "constituent" and "component" parts interchangeably in the
Complaint. For consistency purposes, the Court will use component parts throughout
this order.

1    *Section 3.5* states in part that a person "shall not sell, offer to sell or transfer an

2    unfinished frame or receiver[.]" *Id.* at § 3.5(1).

3    *Section 4* states in part that a person "shall not manufacture or cause to be

4    manufactured or assemble or cause to be assembled a firearm that is not imprinted with

5    a serial number" unless the firearm is: (a) rendered permanently inoperable, (b) an

6    antique firearm, or (c) determined to be a collector's item. *Id.* at §§ 4(1); 4(1)(a)-(c).

7    *Section 5* states in part that a person "shall not possess, sell, offer to sell,

8    transfer, purchase, transport or receive a firearm that is not imprinted with a serial

9    number" unless the person is a (a) law enforcement agency, (b) firearms importer or

10   manufacturer; or the firearm is: (a) rendered permanently inoperable, (b) manufactured

11   before 1969, (c) an antique firearm, or (d) determined to be a collector's item. *Id.* at §§

12   5(1); 5(1)(a)-(b).

13   *Section 5.5* further provides: "Nothing in the provisions of sections 3 to 5,

14   inclusive, of this act shall be deemed to prohibit the sale of an unfinished frame or

15   receiver or firearm that is not imprinted with a serial number to a firearms importer or

16   manufacturer or a license dealer before January 1, 2022." *Id.* at § 5.5.

17   A person in violation of any part of §§ 3-5 is guilty of a gross misdemeanor for a

18   first offense and a category D felony for a second or any subsequent offense. *Id.* at §§

19   3-5. Sections 3 and 5 become effective on January 1, 2022. *Id.* § 10(2).

20   **III.    LEGAL STANDARD**

21   A court may dismiss a plaintiff's complaint for "failure to state a claim upon which

22   relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must

23   provide "a short and plain statement of the claim showing that the pleader is entitled to

24   relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

25   While Rule 8 does not require detailed factual allegations, it demands more than "labels

26   and conclusions" or a "formulaic recitation of the elements of a cause of action."

27   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual

28   allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at

1    555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual

2    matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

3    (quoting *Twombly*, 550 U.S. at 570).

4    **IV.    DISCUSSION**

5         Defendants argue that dismissal is warranted because A.B. 286 does not violate

6    the Second Amendment, nor does the Fifth Amendment's Takings Clause restrict the

7    government's power to regulate and prohibit "dangerous private property." (ECF No.

8    34.) The Court will first address the Second Amendment, followed by the Takings

9    Clause of the Fifth Amendment. Because the Court finds that Plaintiffs have failed to

10   state a claim upon which relief can be granted, the Court will grant Defendants' Motion.

11        **A.    Second Amendment**

12        The Second Amendment expressly states: "A well regulated Militia, being

13   necessary to the security of a free State, the right of the people to keep and bear Arms,

14   shall not be infringed." U.S. Const. amend. II. In 2008, the Supreme Court held in

15   *District of Columbia v. Heller* that the Second Amendment protects the "individual right

16   to keep and bear arms." 554 U.S. 570, 622. The "central component" of that right to

17   bear arms is for self-defense, particularly defense of the home. *Id*. at 599, 628-29.

18   However, the Court also cautioned that, "[l]ike most rights, the right secured by the

19   Second Amendment is not unlimited" and historically speaking "the right was not a right

20   to keep and carry any weapon whatsoever in any manner whatsoever and for whatever

21   purpose." *Id*. at 626.[5] The Court later held that the Second Amendment is also fully

22   applicable to states and municipalities through the Fourteenth Amendment. *See*

23   *McDonald v. City of Chi.*, 561 U.S. 742, 790-91 (2010).

24        The Ninth Circuit has adopted a two-step framework to evaluate Second

25   Amendment claims after *Heller* and *McDonald*. *See Young v. Hawaii*, 992 F.3d 765,

26   _____

27        [5]In *Heller*, the Supreme Court indicated that determining the scope of the Second
     Amendment's protection requires a historical and textual analysis of the Amendment,
     *see id*. at 576-605, but the Court declined to undertake an exhaustive historical analysis
28   of the full scope of the Amendment, *see id*. 626-27.

4

1   783-84 (2021) (en banc).[6] The two-step inquiry requires courts to ask (1) whether the

2   challenged law burdens conduct protected by the Second Amendment and (2) if the law

3   burdens protected Second Amendment conduct, then the second step requires

4   determining the appropriate level of scrutiny and applying it to the challenged law. *See*

5   *id.*, 992 F.3d at 783-84.

6          "The level of scrutiny depends upon (1) how close the law comes to the core of

7   the Second Amendment right, and (2) the severity of the law's burden on the right."

8   *Jackson v. City & Cnty. of S.F.*, 746 F.3d 953, 963 (9th Cir. 2014) (internal quotes and

9   citation omitted). Courts must look at the "historical understanding of the scope of the

10  right." *Young*, 992 F.3d at 783 (quoting *Heller*, 554 U.S. at 625). A law that imposes a

11  severe restriction on a core right, which destroys the protection of the Second

12  Amendment, is "unconstitutional under any level of scrutiny." *Jackson*, 746 F.3d at 961

13  (citing *Heller*, 554 U.S. at 629). "[I]f a challenged law does not implicate a core Second

14  Amendment right, or does not place a substantial burden on the Second Amendment

15  right, [courts] may apply intermediate scrutiny." *Id.* "[A]ll forms of the [intermediate

16  scrutiny] standard require (1) the government's stated objective to be significant,

17  substantial, or important; and (2) a reasonable fit between the challenged regulation and

18  the asserted objective." *Id.* at 965 (quoting *Chovan*, 735 F.3d at 1129).

19                    **1.    Burden on Protected Conduct**

20         Defendants argue that Plaintiffs cannot meet the required two-step inquiry for

21  their claim. (ECF No. 34 at 7-10.) More specifically, Defendants argue that Plaintiffs

22  cannot show A.B. 286 burdens constitutionally protected Second Amendment conduct,

23  and thus the inquiry ends there. (*Id.* at 7-8.) Plaintiffs counter that they have asserted a

24  "strong, ultimately meritorious" Second Amendment claim as A.B. 286 is a law that

25

26

27         [6]*See also Silvester v. Harris*, 843 F.3d 816, 820-21 (9th Cir. 2016); *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 939 (9th Cir. 2016); *Jackson v. City & Cnty. of S.F.*,
28  746 F.3d 953, 960-61 (9th Cir. 2014); *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013).

1    targets firearms in common use for lawful purposes, and the law targets the right to self-

2    manufacture firearms. (ECF No. 53 at 5-9.) The Court agrees with Defendants.

3           The focus of the analysis as stated in *Heller* requires the Court to determine

4    whether A.B. 286 burdens the "central component" of the right to bear arms for self-

5    defense in the home. *See* 554 U.S. at 599, 628-29. As it stands, A.B. 286 regulates

6    firearms not imprinted with serial numbers—the law therefore "does not interfere with

7    the right to 'defense of hearth and home'" because Plaintiffs' ability to use any and all

8    serialized firearms to defend their homes remains unchanged. (ECF No. 34 at 8

9    (quoting *Heller*, 554 U.S. at 635).) *Cf. Jackson*, 746 F.3d at 968 ("A ban on the sale of

10   certain types of ammunition does not prevent the use of handguns or other weapons in

11   self-defense. The regulation . . . limits only the manner in which a person may exercise

12   Second Amendment rights by making it more difficult to purchase certain types of

13   ammunition."). Notably, Plaintiffs admitted at the Hearing that a person could still

14   acquire a serialized firearm from a licensed seller for defense of self and home under

15   A.B. 286. (ECF No. 48.) Thus, A.B. 286 does not target firearms in common use for

16   lawful purposes.

17          Moreover, A.B. 286 does not target the right to self-manufacture firearms.

18   Rather, it prohibits self-manufacturing of *unserialized* firearms. A.B. 286 § 4(1) ("a

19   person shall not manufacture . . . a firearm that is not imprinted with a serial number").

20   Under the statutory scheme, Plaintiffs are not entirely stripped of the opportunity to self-

21   manufacture and assemble firearms, they are only prohibited from doing so with

22   unserialized firearms. *See* § 4(1). A.B. 286 additionally provides that individuals can

23   self-manufacture and assemble unserialized firearms so long as the firearms fall within

24   an exception. *See* § 4(1)(a)-(c). Accordingly, the Court finds A.B. 286 does not severely

25   burden Second Amendment protected conduct, but merely regulates it. Intermediate

26   scrutiny rather than strict scrutiny is therefore appropriate for the Court's analysis of

27   ///

28   ///

1    A.B. 286.[7] *See Young*, 992 F.3d at 784 (stating that intermediate scrutiny applies in

2    cases where Second Amendment rights are "affected in some lesser way"); *see also*

3    *Teter v. Connors*, 460 F. Supp. 3d 989, 1003 (D. Haw. 2020) (citation omitted,

4    emphasis in original) (stating that "[m]ost post-*Heller* decisions have landed on some

5    form of intermediate scrutiny" and the court is unaware of any Ninth Circuit cases

6    applying strict scrutiny in the Second Amendment context).

### 2.    Stated Objective and Reasonable Fit

8            Defendants argue that "the ability of law enforcement to conduct serial number

9    tracing" is "a substantial or important interest" of the State of Nevada. (ECF No. 34 at 9-

10   10 (quoting *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir. 2018)).) Additionally, A.B. 286

11   is a "reasonable fit" to that important interest as it does not prevent individuals who are

12   legally permitted to obtain a firearm from purchasing a serialized firearm or receiver for

13   home defense. (*Id.*) Plaintiffs appear to counter that the State's important interest must

14   be "narrowly tailored" to achieve its interest. (ECF No. 53 at 11-12.) Moreover, Plaintiffs

15   assert the State's claimed interest is "disingenuous," "pretextual," and an "attempt to

16   justify the law as being something other than what it is." (*Id.* at 13.) The Court disagrees

17   with both of Plaintiffs' arguments and finds they have failed to plausibly plead A.B. 286

18   is not a reasonable fit for an important government interest.

19           As a preliminary matter, the Court rejects Plaintiffs' apparent application of the

20   strict scrutiny, rather than intermediate scrutiny standard. At the Hearing, Plaintiffs

21   argued A.B. 286 must be "narrowly tailored" to the government's objective. (ECF No.

22   48.) But Plaintiffs appeared then—as they do now—to apply strict scrutiny, which the

23   Court has previously determined is improper. (*See* ECF No. 51 at 8, n.8.) The Court

24   reiterates that while courts have used various terminology to describe the intermediate-

25

26           [7]Defendants also argue that A.B. 286 would still pass constitutional muster under
     strict scrutiny review. (ECF No. 34 at 9-10.) Plaintiffs on the other hand, citing to
27   *Jackson*, 746 F.3d at 961, together with *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct.
     2373 (2021), argue the Court should apply "exacting scrutiny" as the appropriate
28   standard. (ECF No. 53 at 11, 13.) The Court declines to address these arguments as it
     has determined that intermediate scrutiny is the appropriate level of scrutiny.

1    scrutiny standard, as mentioned above, the government must show "a *reasonable fit*

2    between the challenged regulation and asserted objective" under intermediate scrutiny.

3    *Jackson*, 746 F.3d at 965 (quotes omitted, emphasis added); *see Teter*, 460 F. Supp.

4    3d at 1003 (stating that most decisions post-*Heller* "have landed on some form of

5    intermediate scrutiny."). Intermediate scrutiny is not a strict test, and the Ninth Circuit

6    has expressed that the standard "does not require the least restrictive means of

7    furthering a given end." *Silvester*, 843 F.3d at 827 (quoting *Jackson*, 746 F.3d at 966);

8    *see also Altman v. Cnty. of Santa Clara*, 464 F. Supp. 3d 1106, 1129 (N.D. Cal. 2020)

9    ("The Ninth Circuit . . . does not require narrow tailoring for firearm regulations subject to

10   intermediate scrutiny."). As such, and despite Plaintiffs repeated contention, A.B. 286

11   need not be narrowly tailored to the government's important objective.

12        The Court now turns to whether Plaintiffs plausibly assert that A.B. 286 fails to

13   pass intermediate scrutiny. In analyzing the first prong of intermediate scrutiny review,

14   the Court must determine whether the government's stated objective is significant,

15   substantial, or important. *See Jackson*, 746 F.3d at 965. Defendants cite to a

16   congressional report that concludes unserialized firearms are a present and increasing

17   threat to public safety because they present a "homeland security challenge" and they

18   "hamstring[ ] law enforcement's ability to investigate crimes committed with untraceable

19   weapons." (ECF No. 34 at 5 (quoting H.R. Rep. No. 116-88, pt. 1, at 2 (2019).)

20   Defendants further note that law enforcement agencies recovered nearly 24,000

21   privately made firearms, without serial numbers on the frame or receiver, from crime

22   scenes between 2016 and 2020. (*Id.* (citing Definition of "Frame or Receiver" and

23   Identification of Firearms, 86 Fed. Reg. 27720,27722 (May 21, 2021) (to be codified at

24   27 C.F.R. pts. 447, 478, 479)). The Court, in considering the government's stated

25   objectives, will not impose "an unnecessarily rigid burden of proof . . . so long as

26   whatever evidence the [government] relies upon is reasonably believed to be relevant to

27   ///

28   ///

1  the problem that the [government] addresses." *Jackson*, 746 F.3d at 965 (quoting

2  *Renton v. Playtime Theatres*, 475 U.S. 41, 50-52 (1986)).[8]

3  Here, A.B. 286 prohibits "a person from engaging in certain acts relating to

4  firearms which are not imprinted with a serial number." A.B. 286, 2021 Leg., 81st Sess.

5  (Nev. 2021). When the Nevada Legislature considered A.B. 286, Assemblywoman

6  Sandra Jauregui—a sponsor of the Bill—echoed Congress' concerns when she stated

7  that unserialized firearms are a threat to public safety because they circumvent

8  background checks, and they are untraceable if used in a crime. (ECF No. 34 at 6

9  (citing *Prohibits Certain Acts Relating to Firearms: Hearing on A.B. 286 Before Senate*

10  *Comm. on Judiciary*, 81st Session (May 11, 2021) (statement of Sandra Jauregui,

11  Assemblywoman)). Moreover, Assemblywoman Jauregui "explained that ghost guns are

12  an especially acute threat to Nevada because one of the largest unfinished receiver kit

13  companies in the nation, Polymer80, Inc. is based [in Nevada]." (*Id.*)

14  Plaintiffs do not contest the government's interest is important or substantial. Nor

15  can they. It is "self-evident" that preventing gun violence and maintaining public safety is

16  a long-acknowledge and undeniably important government interest. *Chovan*, 735 F.3d

17  at 1139; *see also Jackson*, 746 F.3d at 965; *United States v. Salerno*, 481 U.S. 739,

18  748 (1977) ("[T]he Government's regulatory interest in community safety can, in

19  appropriate circumstances, outweigh an individual's liberty interest."). Additionally, the

20  government's objective in preserving law enforcement's ability to investigate crimes

21  committed with untraceable weapons is also a substantial and important government

22  interest. *See Pena v. Lindley*, 898 F.3d 969, 981-82 (9th Cir. 2018) (holding that a

23  California law requiring new models of semiautomatic pistols to be imprinted with

24  characters, including a serial number, passed constitutional muster under intermediate

25  scrutiny because "preserving the ability of law enforcement to conduct serial number

26  _____

27  [8]Plaintiffs seek to raise doubt regarding the justification behind A.B. 286 (*see* ECF No. 53 at 17-20), but the Court declines to address these issues as the Court makes clear here that it does not need to impose an unnecessary burden of proof so

28  long as the government's stated objective is reasonably believed to be relevant to the problem. *See Jackson*, 746 F.3d at 965.

1    tracing—effectuated by limiting the availability of untraceable firearms—constitutes a

2    substantial or important interest."). As such, the government's objectives in enacting

3    A.B. 286 are undeniably substantial and important, thus satisfying the first prong of

4    intermediate scrutiny.

5          The second prong of intermediate scrutiny requires a determination that A.B.

6    286's regulations be a "reasonable fit" with the government's asserted objectives.

7    *Jackson*, 746 F.3d at 965. Defendants articulate that A.B. 286 "addresses the threat

8    posed by unserialized firearms and firearm components." (ECF No. 34 at 6.) A plain text

9    reading of A.B. 286 affirms that it does so by prohibiting the possession and sale of

10   firearms and component parts that lack serial numbers. §§ 3(1), 3.5(1). It also prohibits

11   a person from manufacturing or assembling an unserialized firearm unless it falls within

12   a categorical exception, *see* A.B. 286 § 4(1)(a)-(c). Moreover, A.B. 286 prohibits the

13   possession of unserialized firearms unless an exception applies, *see* § 5(1)(a)-(b).

14         A.B. 286 focuses only on unserialized firearms that (1) are not within a

15   categorical exception, (2) bypass background checks by virtue of self-manufacturing

16   and assembly, and (3) are untraceable without a serial number. Plaintiffs do not directly

17   challenge that A.B. 286 is not a "reasonable fit" for the state's substantial or important

18   interest in promoting public safety or conducting serial number tracing. Instead, Plaintiffs

19   contend the government's objectives are "disingenuous." (ECF No. 53 at 12-17.)

20   According to Plaintiffs, if the purpose of A.B. 286 is to require firearms be serialized,

21   then the State would have established a mechanism permitting individuals to pass a

22   background check and obtain a state-issued serial number like California and

23   Connecticut. (*Id.*) But Plaintiffs misstate the purpose of A.B. 286. While the law requires

24   firearms be serialized, *see* A.B. 286 §§ 4, 5, the purpose itself is not to serialize

25   firearms. Rather, as Defendants clearly state, the purpose is to maintain public safety

26   and to preserve the ability of law enforcement to investigate crimes committed with

27   untraceable weapons. Plaintiffs' repeated assertion that Defendants are required to

28   create a mechanism to obtain serialization appears to be an effort to mask another

1    effort to argue A.B. 286 must be "narrowly tailored" to the government's stated

2    objective.[9] However, as the Court has made clear, intermediate scrutiny rather than

3    strict scrutiny is appropriate in analyzing A.B. 286. Moreover, merely because California

4    and Connecticut have chosen a different avenue to regulate unserialized firearms does

5    not require Nevada to follow identically in tow. Because Defendants are not required to

6    narrowly tailor their regulation, Plaintiffs' argument is inapposite. Plaintiffs have thus

7    failed to plead that A.B. 286 is not a reasonable fit for the state's important interest of

8    ensuring public safety. As such, Plaintiffs have failed to state a Second Amendment

9    claim upon which relief can be granted.

10            **B.      Fifth Amendment's Takings Clause**

11            Plaintiffs allege that the enactment of A.B. 286 resulted in a "taking" of their

12    unserialized firearms and component parts. (ECF No. 1 at 33-36.) The Takings Clause

13    of the Fifth Amendment provides: "[N]or shall private property be taken for public use,

14    without just compensation." U.S. Const. amend. V. The Clause is made applicable to

15    states through the Fourteenth Amendment. *See Chi., B. & Q.R. Co. v. Chicago*, 166

16    U.S. 226, 239 (1897). A physical taking of property occurs "[w]hen the government

17    physically takes possession of an interest in the property for some public purpose."

18    *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).

19    When a government regulation of private property becomes so onerous and thus "goes

20    too far[,] it will be recognized as a taking." *See Pa. Coal Co. v. Mahon*, 260 U.S. 393,

21    415-16 (1922).

22            Although it is somewhat unclear from the Complaint and Plaintiffs' opposition to

23    the Motion, Plaintiffs appear to argue that A.B. 286 resulted in a regulatory taking and a

24    nuisance taking.[10] Defendants argue that Plaintiffs have failed to demonstrate a taking

25

26            [9]To support this argument, Plaintiffs cite and discuss a state court action before
      the Third District Court of Nevada pertaining to A.B. 286. (ECF No. 53 at 13-17.) *See*
27    *Polymer80, Inc. v. Sisolak*, Case No. 21-CV-00690 (Nev. 3rd. Jud. Dist. Ct. July 16,
      2021). The Court notes that the state court action has no binding authority on this Court.

28            [10]In its previous Order, the Court notably addressed the issue of physical taking
      because Plaintiffs' motion for a preliminary injunction argued that the government had a

1  has occurred. The Court will first address the parties' arguments as they related to

2  regulatory taking, then discuss the government's police power, and finally conclude by

3  addressing Defendants' nuisance taking argument.

4  **1.      Regulatory Taking**

5  Defendants argue that A.B. 286 is not a "physical appropriation" of property in

6  violation of the Fifth Amendment's Takings Clause because the State is not taking title

7  to unserialized firearms or component parts. (ECF No. 34 at 11.) Nor does the law

8  violate the Takings Clause since the government is not required to compensate an

9  owner when it prohibits a type of personal property through a "valid law." (*Id.* at 10-11.)

10  Plaintiffs counter that unserialized firearms and component parts are subject to

11  dispossession because A.B. 286 destroys or diminishes their value. (ECF No. 53 at 23.)

12  A.B. 286 is thus a *per se* taking because it deprives all economically beneficial use of

13  the property. (*Id.* at 23-14.) The Court disagrees with Plaintiffs.

14  The Supreme Court has articulated two guidelines for determining whether a

15  government regulation is "onerous." *See Murr v. Wisconsin*, 137 S. Ct. 1933, 1942-43

16  (2017). The first pertains to whether a regulation "denies all economically beneficial or

17  productive use of" the property. *Id.* The second applies when a regulation does not so

18  deny. In that case, "a taking still may be found based on *a complex of factors*, including

19  (1) the economic impact of the regulation on the claimant; (2) the extent to which the

20  regulation has interfered with distinct investment-backed expectations; and (3) the

21  character of the governmental action." *Id.* (emphasis added and quotation marks

22  omitted) (citing *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978)

23  ("*Penn Central*")).

24

25

26  duty to provide "just compensation" since A.B. 286 required the property at issue be
sold or transferred. (ECF No. 51 at 14-15.) In their response to the motion to dismiss,
Plaintiffs do not oppose Defendants' argument that they are not taking title to the

27  property at issue, nor does Plaintiffs raise concern that the alleged taking is not for a
public purpose. (*See* ECF No. 53 at 20-24.) Because Plaintiffs' arguments pertain to the

28  diminished value and economic benefit of unserialized firearms and component parts,
the Court finds only a regulatory takings analysis is warranted.

1    Plaintiffs do not explicitly argue in their response that the *Penn Central* complex

2    factors test has been met for there to be a regulatory taking. (*See* ECF No. 53 at 20-24.)

3    Plaintiffs nevertheless conclude that the economic impact on the property at issue is

4    "substantial" and the character of the government's action is an "invasion of property

5    interests" that requires compensation in accordance with the Takings Clause. (*Id.* at 24.)

6    But as the Court found in its previous Order, A.B. 286 does not deny all economically

7    beneficial or productive use of unserialized firearms and component parts, nor is it clear

8    based on the Complaint and the record the extent or certainty of the economic impact

9    on Plaintiffs. (ECF No. 51 at 11-12.) Without more, and because Plaintiffs fail to argue

10   the *Penn Central* complex factors test weigh in their favor, the Court declines to engage

11   further analysis. The Court therefore finds that Plaintiffs have not sufficiently pled a

12   regulatory taking claim.

13              **2.     Police Power**

14   Even if the Court were to find there is a taking, regulatory or physical, Plaintiffs'

15   claim fails because A.B. 286 is an appropriate exercise of the government's police

16   power. In their Motion, Defendants argue the government does not need to compensate

17   Plaintiffs when A.B. 286 prohibits "a type of personal property" via a "valid law." (ECF

18   No. 34 at 10.) That is because, according to Defendants, the Takings Clause does not

19   restrict the government's traditional power to regulate and prohibit "dangerous private

20   property." (*Id.* at 2.)  Although not explicit, inherent in Defendants' argument is that A.B.

21   286 is an appropriate exercise of the government's police power. Plaintiffs appears to

22   counter that Defendants have not demonstrated unserialized firearms and component

23   parts are either "dangerous," "unusual," or "both." (ECF No. 53 at 21.) The Court agrees

24   with Defendants.

25   The police power exception to the Takings Clause provides that "[a] prohibition

26   simply upon the use of property for purposes that are declared, by valid legislation, to

27   be injurious to the health, morals, or safety of the community, cannot, in any just sense,

28   be deemed a taking." *Mugler v. Kansas*, 123 U.S. 623, 668 (1887). "If [an] ordinance is

1   otherwise a valid exercise of the [government's] police powers, the fact that it deprives

2   the property of its most beneficial uses does not render it unconstitutional." *Goldblatt v.*

3   *Hempstead,* 369 U.S. 590, 592 (1962) (collecting cases).

4          The Court is unaware of—and the parties have not pointed to—any binding Ninth

5   Circuit case explicitly discussing police power exception to the Takings Clause in the

6   context of firearms regulations.[11] However, several other courts have applied this

7   principle in finding that firearm regulations do not constitute a taking. *See Adkins v.*

8   *United States*, 82 Fed. Cl. 619, 623-24 (2008) (holding that prohibition on the sale of

9   machine guns to anyone other than law enforcement agencies did not constitute a

10  physical or regulatory taking); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) (holding

11  that a statue requiring machine guns denied registration be sold, surrendered, or

12  disposed, was a valid exercise of police power thereby not a taking); *Rupp v. Becerra*,

13  Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138451, *8-*9 (C.D. Cal. May 9, 2018)

14  (dismissing a Takings claim on the grounds that a California prohibition on certain

15  weapons represented an exercise of police power and not a taking). The Court finds this

16  authority persuasive and concludes that firearm regulations may fall within the police

17  power exception.

18         While Plaintiffs contend Defendants have not demonstrated that the property at

19  issue are "dangerous" or "unusual," Defendants—and the Nevada Legislature—have in

20  fact adequately demonstrated that unserialized firearms and component parts are

21  properly considered "dangerous private property." As discussed above, public safety

22  and the importance of firearm tracing necessitates the prohibition of unserialized

23  firearms and component parts. It is not clear what further showing Plaintiffs demand.

24  Nevertheless, the Court finds that Defendants have properly invoke the police power

25  exception, thus A.B. 286 is not a taking.

26  _____

27         [11]The Court notes in an unpublished opinion, *Duncan v. Becerra*, 742 F. App'x
    218 (9th Cir. 2018), the Ninth Circuit was presented with a similar Takings Clause claim.
    But there, the Ninth Circuit affirmed the district court's findings on a deferential abuse of
28  discretion standard. The Court finds the guidance from *Duncan* inconclusive as applied
    to the facts of this case.

1        **3.        Nuisance Taking**

2            In their opposition to the Motion, Plaintiffs also seek to characterize A.B. 286 as a

3   "nuisance taking." (ECF No. 53 at 21-22.) Citing *Lucas v. S.C. Coastal Council*, 505

4   U.S. 1003, 1029 (1992), Plaintiffs argue that A.B. 286 can only be proper if the property

5   or its intended use has historically been prohibited. (*Id.* at 22.) Plaintiffs' reliance on

6   *Lucas*, however, is misplaced.

7            In *Lucas*, the Supreme Court stated that, "when the owner of real property has

8   been called upon to sacrifice all economically beneficial uses in the name of the

9   common good, that is, to leave his property economically idle, he has suffered a taking."

10  505 U.S. at 1019. Therefore, "[w]here a regulation 'denies all economically beneficial or

11  productive use of land,' the multi-factor analysis established in *Penn Central* is not

12  applied, and a compensable taking has occurred unless 'the logically antecedent inquiry

13  into the nature of the owner's estate shows that the proscribed use interests were not

14  part of his title to begin with.'" *Esplanade Props., Ltd. Liab. Co. v. City of Seattle*, 307

15  F.3d 978, 984 (9th Cir. 2002) (quoting *Lucas*, 505 U.S. at 1027). But as the Court

16  discussed above, A.B. 286 does not deny all economically beneficial or productive use

17  of the property to be a *per se* taking. Even if the Court found differently, the *Lucas*

18  decision articulated that compensation "must be accorded" to "regulations that prohibit

19  all economically beneficial use of *land*[.]" 505 U.S. at 1029 (emphasis added). A.B. 286,

20  however, does not regulate land nor real property. Plaintiffs' nuisance taking argument

21  is therefore legally infirm.

22           Defendants have thus shown that as a matter of law, A.B. 286 cannot constitute

23  a regulatory taking. The Court will thus dismiss Plaintiff's Fifth Amendment's Takings

24  Clause claim.

25  **V.    LEAVE TO AMEND**

26           Plaintiffs request the Court grant them leave to amend their Complaint, but

27  Plaintiffs do not explain how their Complaint can be cured by amendment. (ECF No. 53

28  at 2.) The Court has discretion to grant leave to amend and should freely do so "when

1 justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)

2 (*quoting* Fed. R. Civ. P. 15(a)). Because Plaintiffs do not challenge that public safety is

3 a substantial or important government interest, nor do they argue that A.B. 286 is not a

4 reasonable fit to the government's stated objective, the Court finds the deficiencies in

5 the allegations regarding their Second Amendment claim do not appear to be curable.

6 Moreover, the police power exception applies to the Fifth Amendment takings claim,

7 and thus leave to amend that claim would be futile. Accordingly, Plaintiffs' request for

8 leave to amend their Complaint is denied.

9 **VI.    CONCLUSION**

10 The Court notes that the parties made several arguments and cited to several

11 cases not discussed above. The Court has reviewed these arguments and cases and

12 determines that they do not warrant discussion as they do not affect the outcome of the

13 Motion and the issues before the Court.

14 It is therefore ordered that Defendants' motion to dismiss the complaint (ECF No.

15 34) is granted.

16 The Clerk of Court is directed to enter judgment accordingly and close this case.

17 DATED THIS 29th Day of March 2022.

18

19

20

21 MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28

16